## Stein v. General Discount Company

*John Swartz*, for plaintiff.

*D. S. Malis*, for defendant.

BLUETT, J., April 15, 1935.—This was an action in assumpsit, brought to recover the sum of $55. After the filing of a statement of claim, defendant filed an affidavit of defense raising questions of law which is now before the court for determination.

On October 13, 1934, defendant loaned the plaintiff the sum of $295, which was to be repaid in 11 monthly instalments of $24.50 and a twelfth installment of $25.50, with interest, which loan was secured on the plaintiff's automobile.

As a condition precedent to the granting of this loan by the defendant to the plaintiff, the plaintiff agreed that the defendant would procure and that the plaintiff would pay for insurance on this automobile covering loss by conversion, theft, damage, breakage, towing in case of repossession and payment for all repairs necessary to restore the automobile to the condition in which it was at the time of the granting of the said loan.

At the time of the granting of the loan, the plaintiff requested and authorized the defendant to pay the premium on the said insurance in the amount of $55, out of the proceeds of the loan. In accordance with the said agreement the defendant did procure such coverage with the Indiana Insurance Company

which issued its insurance certificate no. GA 5578, bearing date October 13, 1934, and out of the proceeds of the said loan, the defendant paid to the said Indiana Insurance Company the premium in the sum of $55.

Plaintiff apparently did not wait for a year to pay off the loan, but before that time paid to the defendant the principal of the loan of $295, together with interest. He now brings suit to recover the sum of $55 which was paid by defendant for insurance premium on plaintiff's car and which was deducted by defendant from the $295 at the time the loan was made to plaintiff. Plaintiff now contends that this sum was usurious and is recoverable by him under the Small Loans Act of June 17, 1915, P. L. 1012, sec. 2, as amended by the Act of June 4, 1919, P. L. 375, which provides as follows:

"Any person . . . shall be entitled to loan money in sums of three hundred ($300) dollars or less, either with or without security . . . and to charge the borrowers thereof, for its use or loan, interest at a rate not to exceed three and one-half (3½) per centum per month. No fees, fines, or other charges, either in addition to or as a part of the above specified interest, shall be charged or collected under any pretext whatsoever."

Inasmuch as there appear to be no decisions directly in point in the State of Pennsylvania it would seem to be desirable, notwithstanding the smallness of the amount involved, to write an opinion in deciding the question presented.

In 66 C. J. 232, it is stated:

"It has been held that, under the general rules relating to charges for services rendered or expense incurred by a lender or his agent as usury, a lender may lawfully make a reasonable charge to a borrower for purchasing property for the borrower with the funds lent; for procuring insurance on property pledged or mortgaged to secure the loan . . . insurance against mechanics' liens and completion insurance."

In the case of The Homeopathic Mutual Life Ins. Co. v. Crane et al., 25 N. J. Eq. 418, a mortgage for $11,000 was executed by John R. Crane and wife to the Homeopathic Life Insurance Company of New York. The loan was granted provided a life insurance policy would be taken out by the son of the plaintiff, James P. Crane, for $8,800, payable in 5 years, with an annual premium of $1,004.69. This premium was not unusual or excessive in amount. On page 420, the court said: "On behalf of the defendant, it is insisted that the issuing of the policy was a mere device to obtain interest on the loan at a higher rate than seven per cent. per annum . . . But . . . The defence of usury must be made out by cogent proof. It must be clearly and conclusively shown that more than the lawful rate of interest was intentionally reserved." And on pages 421 and 422 the court continued: "Where a policy is issued . . . as part of a general operation, wherein a loan to the policy holder is the other part, I see no reason to question the legality of the loan, even though it depends on the taking out of the policy. It is a question of bona fides, and must be so dealt with. The expediency of it as a business transaction is one thing; the legality of it is another thing."

In Matthews v. Georgia State Savings Assn., 132 Ark. 219, the plaintiff made a loan from the defendant for $2,800 at the highest legal rate of interest, and executed a bond wherein he agreed to pay the principal and interest in monthly instalments. The bond also provided that the plaintiff was to take out and keep paid the sum of $2,800 fire insurance and $2,800 storm insurance. The plaintiff defaulted in the payments due under the bond, and defended a suit on same on the ground that the provision that he was to take out insurance for the benefit of the defendant caused the said contract to become usurious. It was there held that an agreement by a borrower to take out insurance on the property does not

constitute usury, the court citing 39 Cyc. 982; Webb on Usury, pars. 81, 318, and 324, Goodwin et al. v. Bishop, 145 Ill. 421, and Ammondson v. Ryan, 111 Ill. 506.

In Niles v. Kavanagh et al., 179 Cal. 98, 175 Pac. 462, the court uses the following language: "It is a very usual and entirely legitimate practice for one lending money upon mortgage of real or personal property to require that the borrower insure the security against loss. By so insuring, the borrower is protecting his own property. He is not paying any additional compensation for the use of the money. Even where the lender is an insurance company, and requires, as a condition of making a loan at full legal interest, that the borrower take out insurance with it, the loan is not to be deemed usurious".

The correctness of this decision to the effect that an agreement by the borrower of money to pay the insurance premiums on property mortgaged to secure the loan does not make the contract usurious, particularly where the premium is received by a third party who has no interest in the loan, seems to be incontrovertible, since in such a case the lender certainly receives no additional compensation for the use of his money by reason of the insurance of the security. And the decision is supported by all of the authorities which a search discloses to have passed upon the question. In fact, most of the decisions go even farther, for in some instances the insurance was placed with the lender and the premium paid to him.

A few years ago, when banks were loaning money on first mortgages, it was usually the practice to require title and fire insurance to accompany the bond and mortgage. Even if the title companies issued their own title policies and the premiums for the same were paid to them at the time of settlement yet it was never held to be usurious. Such insurance was equally for the benefit of the borrower as well as for the lender.

And in New England Mortgage Security Co. v. Gay, 33 Fed. 636 (1888), where property was conveyed to secure a loan, it was held that the payment of the insurance premiums on the property by the borrower, in addition to the full legal rate of interest on the loan, did not render the transaction usurious, since in such a case premiums are a lawful expense incurred in protecting the property conveyed to secure the debt.

So, in The New-York Fire Ins. Co. v. Donaldson et al., 3 Edw. Ch. 199 (N. Y. 1838), where an insurance company made a loan secured by a mortgage on condition that the borrower keep the mortgaged property insured in the lender company, it was held that the transaction was not usurious, it not appearing that the agreement was intended by the mortgagees as a device or means to evade the statute against usury. This decision was upon the ground that when the insurance is placed, the premium is not for the loan but for the risk which the company incurs by the contract of insurance, and for which the borrower receives an equivalent for his premium independent of the loan. This was the same position taken by the court in an earlier case of The Utica Ins. Co. v. Cadwell et al., 3 Wend. (N. Y.) 296 (1829), in which it merely appeared that the borrower was required to insure certain property with the lender, no reference being made to any mortgage of such property as security.

We do not agree with plaintiff's contention that the charging of insurance premium in the instant case was usurious and recoverable under the Small Loans Act of June 17, 1915, P. L. 1012, sec. 2, as amended. There have been "No fees, fines, or other charges" collected by defendant for its own use "under any pretext whatsoever."

We conclude that the contract as entered into between the plaintiff and the

defendant in this case was entered into with bona fides, was not usurious, and the affidavit of defense raising questions of law must be sustained.

The defendant's questions of law are sustained and judgment is entered for the defendant.