MATTHEWS v. GEORGIA STATE SAVINGS ASSOCIATION.

Opinion delivered January 14, 1918.

1.  USURY—PAYMENT OF ATTORNEY'S FEES BY BORROWER.—The statute against usury is not violated, where the lender requires the borrower to pay the cost of examining the title to the land offered as security, or of inspecting and reporting upon any property offered as security, or preparing papers and doing every formal act necessary to the security of the loan, the loan bearing interest at the rate of 10 per cent. per annum.

2.  USURY—INSURANCE.—An agreement by a borrower to take out insurance on the property, which secures the loan, does not constitute usury, in the absence of a showing that the policy was taken out as a cloak or device to evade the statutes.

3.  USURY—DEFAULT IN PAYMENT.—A loan was secured by a bond and mortgage, the bond providing that the nonpayment of three installments of principal or interest after the same shall fall due, shall authorize the lender to proceed to enforce the payment of

the loan together with the interest due thereon; *held,* the bond did not provide for the exaction of usury.

4.   USURY—DATE OF EXECUTION OF AGREEMENT.—A contract is not usurious, when the parties acted in good faith, where 10 per cent. interest is charged, where the agreement was dated May 21, 1915, but was not closed and the money delivered until June 9, 1915.

5.   USURY—PARTIAL PAYMENTS.—Money was loaned to appellant, the agreement providing that the principal and interest should be paid in partial payments. *Held,* under the evidence that the agreement was not usurious.

Appeal from Clay Chancery Court, Western District; *Archer Wheatley,* Chancellor; reversed in part, affirmed in part.

*F. G. Taylor,* for appellant.

The loan is usurious. The payment or charge for interest prior to the time the money was received and the payment of a commisison to Brown and the expenses of McRaven constitute usury. Webb on Usury, § 308, and note 1; 29 Cyc. 956 and notes 27-8-9; 54 Ark. 566; 29 Cyc. 975 and note 21; 105 Ark. 653.

*Huddleston, Fuhr & Futrell* and *Hitck & Denmark* (of Georgia), for appellees.

1.   The loan is not usurious.   129 Ark. 167; 74 Ark. 241; Webb on Usury, § 219.

2.   Brown's fee for examining the title and preparing the abstract and McRaven's expenses did not make the loan usurious.   39 Cyc. 982; Webb on Usury, § 323; 51 Ark. 548; 55 *Id.* 268; 62 *Id.* 431, etc.   See also 39 Cyc. 945, 654, 985; 29 A. & E. Enc. Law 486, 505-6-8; Webb on Usury, § 119, etc., 221; 37 Ark. 534; 68 *Id.* 162.

3.   The partial payment plan was correctly applied here.   Webb on Usury, § 219; 1 Cranch (C. C.) 498; 22 Fed. Cases, No. 13107; 13 Peters 359; 21 Fed. Cases No. 12156a; 1 Johns Chy. 13; Southerland on Damages, § 379.

4.   On the cross-appeal Brown was not appellants' agent and his fee was not chargeable to appellant.   Nor did it make the loan usurious.   51 Ark. 534, 548; 63 *Id.*

385; 123 Ark. 612; 126 Ark. 155; 67 *Id.* 159; 2 C. J. 656, 1224; 31 Cyc. 1224; 105 Ark. 653.

5.    McRaven's expenses were properly chargeable to appellant.  3 Cyc. 982; 62 Ark. 431; Cent. Digest, § § 113-116.

6.    The insurance premium was a proper charge against appellant.  27 Cyc. 1077.

### STATEMENT OF FACTS.

J. A. Matthews instituted this action in the chancery court against the Georgia State Savings Association and A. D. McRaven to cancel, on the ground of usury, a mortgage executed by him on certain real estate situated in the Western District of Clay County, Arkansas, to said association to secure it for a loan made to him.  The association defended on the ground that there was no usury in the transaction and filed a cross-complaint asking for a judgment against Matthews for the amount of his debt and for a foreclosure of the mortgage given to secure it.

According to the testimony of J. A. Matthews himself, he dealt with A. L. Brown of Corning, Arkansas, as agent for the Georgia Savings Association.  Brown charged him, and he paid Brown, the sum of $35 as a commission for procuring the loan.  McRaven, an agent of the association, came from Little Rock, Arkansas, to Corning, Arkansas, to inspect the property and Matthews paid one-half of his railroad fare which amounted to $7.50.  Matthew executed his bond to the association for the sum of $2,800 with 10 per cent. interest per annum from date until paid and the date of the bond was the 21st day of May, 1915.  A deed of trust was executed by Matthews to the association on the same day upon the real property involved in this suit for the purpose of securing the bond and McRaven has been substituted as trustee in said deed of trust.  By the terms of the bond, Matthews obligated himself to pay to said association at its place of business in Savannah, Georgia, on or before the last busi-

ness day in each month until ninety-six monthly payments have been paid, the sum of $40.79, which is made up of the sum of $29.15 as installment of principal and $11.64 as installment of interest upon said loan. It was also stipulated in the bond that he should take out and keep paid the sum of $2,800 fire insurance and $2,800 storm insurance. The money was not received by Matthews until June 9, 1915. He commenced paying installments in the sum of $40.79 on the last day of June, 1915, and made all the payments monthly thereafter until January 1, 1916.

According to the testimony of Edward W. Bell, he was the managing vice-president and had had charge of the business of the Georgia State Savings Association since October, 1890. The letter of acceptance outlining the terms and conditions under which the association would make a loan to Matthews was written by him on the 6th day of May, 1915, at the association's office in Savannah, Georgia. In January, 1915, the association ratified the appointment of A. L. Brown as its local attorney and correspondent at Corning, Arkansas. The association never gave him authority in the matter of procuring or granting loans. The association agreed to consider such applications from his customers as came up to its requirements. Where such customers made formal applications for a loan the association made the necessary investigation as to property values, etc., and submitted the matter to its board of directors. If accepted by the board of directors, the applicant was then notified of the terms and conditions under which the loan would be granted. The association never agreed to pay Brown any commission or fee in connection with procuring or making loans and Brown never had any authority from the association to charge any commission therefor. The association never paid Brown any fee or commission for the loan made to Matthews and did not know about any commission having been paid him and received no part thereof. Brown was named by the association

as an attorney satisfactory to the association to make abstracts and examine titles to real estate upon which loans are made in his county. A. D. McRaven was a loan inspector for the association in charge of the section of Arkansas in which the town of Corning is situated. He had no authority to make any contract on behalf of the association and worked on a salary paid him by the association. The association had no knowledge that Matthews paid to McRaven any part of his traveling expenses or inspection fee in examining the land in question. The $2,800 loan to Matthews was closed on June 9, 1915. When the check of the association for this amount payable to the order of Matthews was issued and sent to A. L. Brown and Matthews was notified to call on him at once and receive the money on June 8, 1915, the association wrote to Brown that the loan had been granted and that the first installment on the contract, $40.79, would fall due and must be paid by the last day of the present month and that he would also be due the association a like amount by the last day of each month thereafter until ninety-six installments had fallen due and had been paid in accordance with the terms of the contract.

The testimony of the vice-president was corroborated by that of the bookkeeper of the association. Other testimony will be stated or referred to in the opinion.

The chancellor found that there was no usury in the transaction and a judgment was accordingly entered against Matthews in favor of the association for the balance due it. A decree of foreclosure of the deed of trust given to secure the debt was also entered of record.

The plaintiff, Matthews, has appealed, and the defendant has taken a cross-appeal.

HART, J., (after stating the facts). We will first consider the cross-appeal. The chancellor found that A. L. Brown was the agent of the Georgia State Savings Association and was paid a commission of $35, but the chancellor did not find that such commission was paid

with the lender's knowledge express or implied. After giving Matthews credit for the full amount of the commission paid with interest, the court rendered a judgment in favor of the association for the balance due it and entered a decree foreclosing the deed of trust securing the loan.

In the case of *Vahlberg* v. *Keaton,* 51 Ark. 534, the court said:

"The lender may receive for the forbearance of money 10 per cent. per annum and no more. In excess of that his agent can receive no bonus from the borrower. If the agent do receive from the borrower a bonus in excess of the highest lawful interest, either with his knowledge, or under circumstances from which the law will presume he had knowledge, then the transaction is usurious; while, if the agent received the excessive bonus without his knowledge, and under circumstances from which his knowledge could not be reasonably presumed, the transaction would not be usurious."

(1-3) The bond provided that the loan in question should bear interest at the rate of 10 per cent. per annum, the highest legal rate in this State. There is nothing in the record tending to show that the association knew that Brown was charging or receiving a commission in connection with the loan. Indeed, the evidence shows that no commission was paid to Brown. It is true that Matthews testified that he paid him a commission of $35.00 but he was mistaken in so designating the amount paid to Brown. The amount was paid to Brown as an attorney's fee for an examination of the title to the property mortgaged. The association would not make loans unless an abstract of title was furnished prepared by a lawyer in whom they had confidence. Brown was such a lawyer and was designated by the association as one whose examination of titles would be accepted. It was shown that Brown did not have any authority to make a loan for the association and there is nothing in the record to show that the payment of the $35 was a device to

evade our statute against usury. The lender may require the borrower to pay the cost of examining the title to land offered as security or of inspecting and reporting upon any property offered as security, or preparing papers and doing every formal act necessary to the security of a loan. 39 Cyc. 982; Webb on Usury, paragraphs 81, 318 and 324; *Goodwin* v. *Bishop,* 145 Ill. 421; *Ammondson* v. *Ryan,* 111 Ill. 506; *Liskey* v. *Snyder* (Supreme Court of Appeals of West Virginia), 49 S. E. 515; *Mackey* v. *Winkler* (Minn.), 29 N. W. 337; *Daley* v. *Minnesota Loan & Investment Co.* (Minn.), 45 N. W. 1100; *American Mortgage Co.* v. *Woodward* (S. C.), 65 S. E. 730; *Harger* v. *McCullough,* 2nd Denio (N. Y.) 119; *Eaton* v. *Alger,* 2nd Keyes (N. Y.) 41, and *Cobe* v. *Guyer,* 237 Ill. 516, 86 N. E. 1071. The theory on which the borrower is required to pay the cost of the examination of the title is not that he employs the conveyancer but that the lender is entitled to charge the borrower for the expenses to which the lender may be put in making the loan. This principle applies only to expenditures made in good faith. It is evident from the record that the $35 charged Matthews by Brown here was for services in abstracting the title and there is nothing in the record to show that it was a shift or device to conceal usury.

It may also be here stated that the traveling expenses of the inspector paid by Matthews were proper charges under the authorities just cited. See also *Smith* v. *Wolf* (Iowa), 8 N. W. 429, and *Kent* v. *Phelps,* 2nd Day (Conn.) 483.

It is also deducible from the above authorities that an agreement by a borrower to take out insurance on the property does not constitute usury unless it is shown that the policy was taken out as a cloak or device to evade the statutes.

The bond contained a stipulation that the non-payment of three installments of principal or interest after the same shall fall due shall authorize the association

to proceed to enforce the payment of the loan together with the interest due thereon. This provision has reference to the amount of the principal and the interest due thereon at the time the option is acted on, and does not refer to the interest that would accrue subsequent to such time if no action were taken on the option.

Therefore the note is not in this respect usurious. *Eldred* v. *Hart,* 87 Ark. 534; *Graham* v. *Fitts,* 53 Fla. 1046, 13 A. & E. Ann. Cas. 149, and. *Goodale* v. *Wallace* (S. D.), 9 A. & E. Ann Cas. 545.

Section 5385 of Kirby's Digest, provides the rule for computing interest where partial payments have been made. It is as follows:

"In calculating interest, where partial payments may have been made, the interest shall be calculated to the time when the first payment shall have been made, and such payment shall be applied to the payment of such interest; and if such payment exceed the interest, the balance shall be applied to diminish the principal, and the same course shall be observed in all subsequent payments."

(4-5)   Counsel for appellees have prepared and filed with their brief an itemized statement showing the amount due by calculating the interest as provided by the statute. As stated above the bond was dated the 21st day of May, 1915, and the interest was to be payable from date. The transaction was not closed and the money forwarded to Matthews until the 9th day of June, 1915. Hence it is claimed that this constituted usury. The record does not show that this was done as a device for hiding a usurious contract. On the other hand the circumstances of the loan show good faith on the part of the association. It is evident that the delay was unavoidably incident to the completion of the transaction and that there was no intent on the part of the association to charge usurious rate of interest. This is shown by the circumstances attending the consummation of the loan. The bond provided that the $40.79 monthly install-

ment of principal and interest should be paid on the last business day of each month. No attempt was made by the association to collect any interest for the month of May. On the contrary at the time the loan was closed up, and it wrote Matthews on the 8th day of June, 1915, that the money had been forwarded, it notified him that the first installment would be due on the last day of that month and for each succeeding ninety-six months thereafter. Under this construction which was placed by the parties at the time the transaction was closed up there were only nine days in the month of June for which interest was charged. Under the rule of partial payments as laid down by our statutes as shown by the illustrated statements filed with the briefs, these nine days could not in any event make the contract usurious. Moreover the circumstances of the loan show good faith on the part of the association and the delay was not unreasonable. 39 Cyc. 956.

It follows that the chancellor was right in holding that the transaction did not constitute usury but that he erred in holding that Matthews was entitled to the $35 paid Brown.

For his error the decree will be reversed and the cause remanded with directions to enter a decree in accordance with this opinion and for further proceedings according to law.