BRADLEY *v.* HALL, SECRETARY OF STATE.

4-9942                                                     251 S. W. 2d 470

Opinion delivered October 6, 1952.

926

Brooks Bradley, Josh W. McHughes, Roger L. Murrell and Tilghman E. Dixon, for appellant.

Ike Murry, Attorney General and Cleveland Holland, Assistant Attorney General, for appellee.

Bailey & Warren, O. W. Garvin, Howard Cockrill, Armistead, Rector & Armistead, U. A. Gentry, Barber, Henry & Thurman and Wright, Harrison, Lindsey & Upton, AMICI CURIAE.

GEORGE ROSE SMITH, J. This is a petition to enjoin the Secretary of State from certifying as sufficient a ballot title for a proposed constitutional amendment, to be voted upon at the general election next month. The petition asserts that the ballot title is defective, incomplete, and misleading, that it conveys a false idea of the proposed law, and that it contains half truths and partisan coloring. These assertions are controverted by the respondent and by the sponsors of this initiated measure.

The proposed popular name, ballot title, and amendment are as follows:

[Popular Name]
"Modern Consumer Credit Amendment"
[Ballot Title]

"A proposed constitutional amendment to amend Article XIX, Section 13 of the Arkansas Constitution of 1874 by empowering the General Assembly to enact laws to authorize, define, and limit charges, in addition to interest, in connection with the lending of money and commercial transactions."

[Proposed Amendment]

"All contracts for a greater rate of interest than ten per cent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit the

same by law; but when no rate of interest is agreed upon, the rate shall be six per cent per annum. Provided, however, that in addition to interest the General Assembly may authorize charges to be made and retained by a lender for services or expenses in connection with a loan and if such charges so made and retained are within the maximum fixed by the General Assembly such charges shall be considered earned and shall not be considered interest nor shall the difference between a cash sale price and an agreed upon time sales price be considered interest."

Our decisions upon the sufficiency of ballot titles have been so numerous that the governing principles are perfectly familiar. On the one hand, it is not required that the ballot title contain a synopsis of the amendment or statute. *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884. It is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 331. We have recognized the impossibility of preparing a ballot title that would suit every one. *Hogan* v. *Hall,* 198 Ark. 681, 130 S. W. 2d 716. Yet, on the other hand, the ballot title must be free from "any misleading tendency, whether of amplification, of omission, or of fallacy," and it must not be tinged with partisan coloring. *Walton* v. *McDonald,* 192 Ark. 1155, 97 S. W. 2d 81.

It is evident that before determining the sufficiency of the present ballot title we must first ascertain what changes in the law would be brought about by the adoption of the proposed amendment. For the elector, in voting upon a constitutional amendment, is simply making a choice between retention of the existing law and the substitution of something new. It is the function of the ballot title to provide information concerning the choice that he is called upon to make. Hence the adequacy of the title is directly related to the degree to which it enlightens the voter with reference to the changes that he is given the opportunity of approving.

What, then, are the changes in the law that would occur if this amendment were added to the constitution? The first sentence of the amendment is an exact re-enactment of Article 19, Section 13, as it now reads. We are therefore concerned only with the second sentence, which undertakes to modify the present law in two major respects:

First, the General Assembly is to be given the power to authorize lenders to make charges for their services and for their expenses in connection with loans. Even without this amendment many such charges are already permitted, such as fees paid by the lender for an abstract, a title opinion, or an insurance policy. *Winston* v. *Personal Finance Co.*, 220 Ark. 380, 249 S. W. 2d 315. Obviously the amendment is not intended to authorize charges such as these, since they are now permissible. But there are other charges, such as one by which the lender attempts to pass on to the borrower the overhead costs of the lender's business, that are not countenanced by existing law. *Strickler* v. *State Auto Finance Co.*, 220 Ark. 565, 249 S. W. 2d 307. It is reasonable to suppose that the framers of this amendment meant to legalize those charges that have heretofore been regarded as interest and therefore as possibly usurious. This conclusion is reinforced when we observe that the amendment imperatively declares that if such charges are within a maximum to be fixed by the legislature they "shall" be considered earned and "shall not" be considered as interest.

Second, the amendment declares by its concluding clause that the difference between a cash price and a credit price shall not be considered as interest. For the most part this has long been the law in Arkansas, as this court announced in 1880. *Ford* v. *Hancock*, 36 Ark. 248. The present amendment was certainly not drafted for the purpose of reaffirming the existing law. There is, however, one situation in which a time price differential has in the past been treated as interest, when it results from a prearrangement by which a seller enables a lender to obtain more than a ten per cent return upon his money. *Hare* v. *General Contract Purchase*

*Corp.,* 220 Ark. 601, 249 S. W. 2d 973. Doubtless the final clause of the amendment is intended to abrogate this rule.

Thus the proposed amendment has a twofold purpose: (*a*) It would legalize service charges that have previously been regarded as usurious, and (*b*) it would legalize credit price differentials that have previously been regarded as usurious. Of course the wisdom of these changes does not concern this court, but neither should it concern the draftsman of the ballot title. It is his duty to provide an impartial summation of the measure, without injecting sugar-coated language in the hope of subtly winning the voter's approval.

When we test the proposed ballot title by the established rules of law we find it insufficient. We advert first to the popular name, "Modern Consumer Credit Amendment." In the able briefs that have been filed by the proponents of the measure no convincing explanation is offered for the use of the word "modern." It is certainly not descriptive of the amendment, unless we are to say that every amendment is modern merely because it is new. Rather, the word is used as a form of salesmanship, carrying the connotation that the original constitution is old-fogeyish and outmoded, while the proposed amendment is modern and therefore desirable. Even though the popular name need not be as explicit as the ballot title, *Pafford* v. *Hall*, 217 Ark. 734, 233 S. W. 2d 72, it should not be used as a vehicle for unnecessary praise of the measure. In studying his ballot the voter is not bound by the rule of *caveat emptor*. He is entitled to form his own conclusions, not to have them presented to him ready-made.

The ballot title itself is also misleading. It states that the amendment will empower the General Assembly "to authorize, define, and limit charges, in addition to interest." The word "authorize" is taken from the measure itself and is accurately used; as we have seen, the amendment does authorize charges in addition to interest. But the term is not used alone; the phrase is "authorize, define, and limit." The fair implication of

the phrase as a whole is that the legislature is to be given new and additional power to curb charges in addition to interest. Yet this implication has a manifest tendency to mislead, since the true purpose of the amendment is pretty nearly the exact opposite. Since the adoption of the original constitution the General Assembly has unquestionably had full power to define and limit charges in addition to interest. The proposed amendment adds nothing to its power to curb such charges. Yet the voter, after reading this ballot title, could not be blamed for supposing that the measure would tend to restrict charges other than interest, when in fact its purpose is quite the contrary. To say the least, the present title has a greater tendency to mislead than had the title which we condemned in *Westbrook* v. *McDonald, supra,* where we found only that the ballot title "might" mislead. We are not unaware of our responsibility in a case of this kind, but if the result of the election is to represent the disinterested judgment of the people it is plainly our duty to declare this ballot title insufficient.

The petition for an injunction is granted.

GRIFFIN SMITH, C. J., dissents.

GRIFFIN SMITH, C. J. (dissenting). Difficulties confronting those who designed the ballot title and who gave to the initiated amendment its popular title were complicated by our decision in *Hare* v. *General Contract Purchase Corporation* where a so-called "caviet" was expressed. In *Winston* v. *Personal Finance Co. of Pine Bluff* this statement appears: "We are allowing the inspection fee in this case because of the holding of this court in *Mathews* v. *Georgia State Savings Association,* 132 Ark. 219, 200 S. W. 130, 21 A. L. R. 789." It is quite evident, therefore, that the court's majority felt that the constitution contained certain inclusive or exclusive provisions that had not been enforced, otherwise a warning of what the court would or might do in the future would have been surplusage. But in today's opinion the majority takes fright at use of the word "modern" preceding the reference to consumer credit and speaks of it as "salesmanship" and as an effort to deride Art. XIX,

§ 13, of the Constitution, as "old-fogeyish and out-moded."

I think the objection made to the term "authorize and define" is equally without persuasive virtue. No doubt a popular name and a ballot title more acceptable to those who oppose the measure could have been selected, but I do not deem it the function of this tribunal to judicially indorse only those things we would, as individuals, personally approve. If the proposed amendment had gone on the ballot I would have voted against its adoption. However, it is one thing to say whether a document such as this advertised amendment meets the constitutional test entitling it to a place on the ballot, and quite another thing to say whether a particular person likes it. My own view is that there is ample authority under the present constitution to prevent usury, directly or indirectly; but if the people want a different system and are willing to authorize the General Assembly to pass laws legalizing charges that are not now permissive, it is a part of the democratic process to permit these people to express themselves at the polls.

In language that is too clear for misunderstanding the majority opinion says that the proposed amendment "has a twofold purpose: (a) It would legalize service charges that have previously been regarded as usurious, and (b) it would legalize credit price differentials that have previously been regarded as usurious." It must be remembered that the amendment itself appears for many weeks in a newspaper in every county in the state. We are not to assume that the public will be wholly uninformed.

While opposing the amendment personally, yet as a judge I would permit the electors to vote on it.