Ms. Joyce Taylor The Committee for Lottery, Charitable Bingo and Raffles, and Video Terminal Games P.O. Box 21442 Little Rock, AR 72221
Dear Ms. Taylor:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107, of the following popular name and ballot title for a proposed constitutional amendment:
 (Popular Name) AN AMENDMENT TO AUTHORIZE LOTTERY TICKET GAMES, CHARITABLE BINGO, RAFFLES, AND VIDEO TERMINAL GAMES (Ballot Title) AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING LOTTERY TICKET GAMES, CHARITABLE BINGO, RAFFLES, AND TWENTY-FIVE CENT VIDEO TERMINAL GAMES; REQUIRING THAT NO TAX DOLLARS BE USED TO ESTABLISH SAME; CREATING A SEVEN-MEMBER ARKANSAS LOTTERY COMMISSION TO BE APPOINTED BY THE GOVERNOR, SUBJECT TO CONFIRMATION BY THE SENATE, TO ESTABLISH AND CONDUCT THE LOTTERY TICKET GAMES AND TO REGULATE CHARITABLE BINGO, RAFFLES AND VIDEO TERMINAL GAMES AUTHORIZED BY THE AMENDMENT; PROVIDING THAT THE COMMISSION SHALL APPOINT A DIRECTOR TO DIRECT THE OPERATIONS OF THE LOTTERY TICKET GAMES; AUTHORIZING THE COMMISSION TO SPECIFY WHAT LOTTERY TICKET GAMES MAY BE CONDUCTED AND TO REGULATE THE SELECTION OF RETAIL ORGANIZATIONS AUTHORIZED TO SELL LOTTERY TICKETS; PROHIBITING LOTTERY TICKET SALES TO ANYONE UNDER 21 YEARS OF AGE OR THROUGH ANY PURCHASER OPERATED SYSTEM; PROVIDED THAT THE REVENUES FROM THE STATE LOTTERY WILL BE ALLOCATED AS FOLLOWS: AN AVERAGE OF 50 PERCENT IN PRIZES TO PLAYERS; 32 PERCENT TO FUND THE ARKANSAS LOTTERY PHARMACEUTICAL ASSISTANCE PROGRAM FOR MATURE ARKANSANS TO ASSIST WITH THE COST OF PRESCRIPTION MEDICINES FOR THOSE WHO MEET THE AGE, INCOME AND HARDSHIP QUALIFICATION; 10 PERCENT TO THE ARKANSAS LOTTERY COMMISSION TO COVER COSTS OF ADMINISTERING THE ARKANSAS LOTTERY AND REPAYMENT OF START-UP FINANCING WITH ANY REMAINING BALANCE TO BE APPLIED TO THE ARKANSAS LOTTERY PHARMACEUTICAL ASSISTANCE PROGRAM FOR MATURE ARKANSANS; AND 8 PERCENT TO ARKANSAS LOTTERY RETAILERS IN PROPORTION TO THE RETAILER'S SALE OF LOTTERY TICKETS; PROVIDING THAT CHARITABLE BINGO GAMES AND RAFFLES MAY BE CONDUCTED BY ANY NON-PROFIT, TAX-EXEMPT RELIGIOUS, EDUCATION, VETERANS', FRATERNAL, SERVICE, CIVIC, MEDICAL, VOLUNTEER RESCUE SERVICE, FIREFIGHTERS', VOLUNTEER POLICE ORGANIZATION OR OTHER ORGANIZATION WHICH HAS BEEN IN EXISTENCE IN THIS STATE FOR NOT LESS THAN THREE (3) YEARS AND WHICH HAS BEEN ISSUED A CURRENT LICENSE TO CONDUCT THE GAMES; RESTRICTING THE HOURS THAT BINGO GAMES AUTHORIZED BY THIS AMENDMENT MAY BE CONDUCTED; REQUIRING ALL NET RECEIPTS EXCEEDING THE ACTUAL COST OF CONDUCTING A BINGO GAME OR RAFFLES TO BE USED ONLY FOR CHARITABLE, RELIGIOUS OR PHILANTHROPIC PURPOSES; PROVIDING THAT THE ARKANSAS LOTTERY COMMISSION SHALL PROMULGATE RULES AND REGULATIONS FOR LICENSING, MONITORING AND ENFORCEMENT FOR THE PLACEMENT AND OPERATION OF VIDEO TERMINALS IN ARKANSAS; PROVIDING THAT THE GAMES OF BINGO, KENO AND POKER ARE INITIALLY AUTHORIZED TO BE PLAYED ON THE VIDEO TERMINALS AUTHORIZED BY THE AMENDMENT; PROHIBITING PLAY OF VIDEO TERMINAL GAMES BY ANYONE UNDER 21 YEARS OF AGE; PROVIDING THAT VIDEO TERMINAL GAMING MEANS AN ELECTRONIC VIDEO GAME THAT, UPON INSERTION OF TWENTY-FIVE CENT COINS, PROVIDES CREDITS TO PLAY OR SIMULATE THE PLAY OF AUTHORIZED GAMES AND THAT ISSUES A PAY SLIP TO A WINNING PLAYER THAT MAY BE REDEEMED FOR CASH; RESTRICTING THE PLACEMENT OF SUCH VIDEO TERMINALS TO PARI-MUTUEL FRANCHISEES AUTHORIZED TO CONDUCT HORSE RACING OR GREYHOUND RACING AND TO CERTAIN PREMISES WHICH MEET PERMIT REQUIREMENTS OF THE ARKANSAS ALCOHOLIC BEVERAGE CONTROL BOARD'S RULES AND REGULATIONS; LIMITING THE NUMBER OF VIDEO TERMINALS THAT MAY BE LOCATED AT THE AUTHORIZED LOCATIONS; PROVIDING THAT THE ARKANSAS LOTTERY COMMISSION AND THE ARKANSAS STATE POLICE LOTTERY DIVISION TO BE CREATED WILL ADMINISTER THE LICENSING PROGRAM CONNECTED WITH VIDEO TERMINAL GAMES; PROVIDING THAT THE ARKANSAS STATE POLICE LOTTERY DIVISION WILL MONITOR VIDEO TERMINAL GAMES ACCORDING TO GUIDELINES ESTABLISHED BY THE ARKANSAS LOTTERY COMMISSION; PROVIDING THAT LOTTERY SYSTEMS, INC., A PRIVATE ARKANSAS CORPORATION, SHALL SERVE AS THE SOLE AND EXCLUSIVE OPERATOR FOR ALL VIDEO TERMINAL GAMES IN THE STATE AND AS SUCH SHALL OWN, PLACE, INSTALL, SERVICE AND MAINTAIN THE VIDEO TERMINALS; PROVIDING THAT LOTTERY SYSTEMS, INC., WILL SUPPLY THE START-UP FINANCING FOR THE ARKANSAS LOTTERY COMMISSION, THE ARKANSAS LOTTERY TICKET GAMES, THE ARKANSAS STATE POLICE DIVISION, AND THE VIDEO TERMINAL GAMES, SUBJECT TO LOTTERY SYSTEMS, INC. BEING REPAID, EXCEPT FOR COST OF VIDEO TERMINAL GAMES, WITH INTEREST BY THE ARKANSAS LOTTERY COMMISSION WITHIN FIVE (5) YEARS FROM THE DATE OF INITIAL FINANCING FROM LOTTERY GROSS REVENUES AND LICENSING FEES; REQUIRING THAT LOTTERY SYSTEMS, INC. NOT BE REQUIRED TO PROVIDE MORE THAN $65,000,000 FOR THE COMBINED COSTS OF START-UP FINANCING; AND FOR PROCUREMENT, LICENSING AND INSTALLATION OF VIDEO TERMINAL MACHINES; REQUIRING LOTTERY SYSTEMS, INC., BETWEEN START-UP AND SIX MONTHS AFTER THE CONCLUSION OF THE FIVE-YEAR START-UP PERIOD TO CAUSE ALL OF ITS STOCKHOLDERS TO MAKE A PUBLIC OFFERING OF ALL OF THEIR OWNERSHIP TO THE PUBLIC THROUGH LICENSED ARKANSAS SECURITY DEALERS; PROVIDING THAT IF LOTTERY SYSTEMS, INC. FAILS TO PROVIDE THE START-UP FINANCING, THE ARKANSAS LOTTERY COMMISSION SHALL DETERMINE A SUBSTITUTE METHOD FOR IMPLEMENTING THE PROVISIONS OF THIS AMENDMENT; PROVIDING THAT THE VIDEO TERMINAL LICENSING FEES BE FIRST ALLOCATED TO FUND 100 PERCENT (100%) OF THE BUDGET OF THE ARKANSAS STATE POLICE LOTTERY DIVISION WITH THE BALANCE NEXT APPLIED TO FUNDING ONE-HALF OF THE ARKANSAS LOTTERY COMMISSION BUDGET; PROVIDING THAT THE VIDEO TERMINAL GROSS REVENUES SHALL BE ALLOCATED AS FOLLOWS: AN AVERAGE OF 88 PERCENT TO PLAYERS; 3 PERCENT THE FIRST YEAR, 3.6 PERCENT THE SECOND YEAR, AND 4.2 PERCENT THE THIRD YEAR AND 4.8 PERCENT THE FOURTH AND SUBSEQUENT YEARS TO LOCAL POLICE AND SHERIFFS' DEPARTMENTS, STATE GENERAL EDUCATION FUND AND HIGHER EDUCATION FUND AND TO NON-GOVERNMENTAL DIRECT SERVICE SHELTER ORGANIZATIONS TO COMBAT DOMESTIC VIOLENCE; 4.2 PERCENT THE FIRST YEAR, 3.72 PERCENT THE SECOND YEAR, 3.84 PERCENT THE THIRD YEAR AND 3.6 PERCENT THE FOURTH AND SUBSEQUENT YEARS TO THOSE ESTABLISHMENTS LICENSED AND AUTHORIZED TO PLACE VIDEO TERMINAL GAMES ON THEIR PREMISES; AND 4.8 PERCENT THE FIRST YEAR, 4.68 PERCENT THE SECOND YEAR, 3.96 PERCENT THE THIRD YEAR AND 3.6 PERCENT THE FOURTH AND SUBSEQUENT YEARS TO THE ENTITY THAT OWNS OR LEASES AND OPERATES THE VIDEO TERMINALS; PROHIBITING THE IMPOSITION OF ANY STATE OR LOCAL INCOME AND SALES TAX UPON ANY PRIZE WINNINGS FROM GAMES AUTHORIZED BY THE AMENDMENT; PROHIBITING ANY STATE OR LOCAL TAX OF ANY KIND UPON THE FEES OR REVENUES GENERATED PURSUANT TO THIS AMENDMENT OR UPON ANY ASPECT OF THE LOTTERY GAMES AUTHORIZED BY THE AMENDMENT; MAKING THE AMENDMENT EFFECTIVE UPON PASSAGE, RENDERING ITS PROVISIONS SEVERABLE, AND REPEALING ALL EXISTING LAWS AND CONSTITUTIONAL PROVISIONS TO THE EXTENT THEY CONFLICT WITH THIS AMENDMENT; PROVIDING THAT THIS AMENDMENT IS SELF-EXECUTING; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to Section 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, or if the proposed popular name and ballot title are sufficiently misleading, the entire petition may be rejected.
Section 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment or likelihood that it will accomplish its stated objective. Consequently, this review has been limited to determining whether the proposed popular name and ballot title accurately and impartially summarize the provisions of the initiative.
The purpose of my review and certification is to insure that the popular name and ballot title honestly, intelligently, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984). The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734,233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions which might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaneyv. Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining its sufficiency. Id.
A ballot title must include an impartial summary of the proposed amendment which will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). It must convey an intelligible idea of the scope and import of the proposition. Bradleyv. Hall, 220 Ark. 925, 251 S.W.2d 470 (1952). It must be "free of any misleading tendency whether by amplification, omission, or fallacy, and it must not be tinged with partisan coloring." Bailey v. McCuen,318 Ark. 277, 284, 884 S.W.2d 938 (1994), citing Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992), Ferstl v. McCuen, 296 Ark. 504,758 S.W.2d 398 (1988), and Bradley v. Hall, supra. According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey, 318 Ark. at 285, citing Finn v. McCuen,303 Ark. 418, 798 S.W.2d 34 (1990), Gaines v. McCuen, 296 Ark. 513,758 S.W.2d 403 (1988), Hoban v. Hall, supra, andWalton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). On the other hand, if statements in the ballot title have "a tendency to mislead the voter so as to thwart a fair understanding of the issues presented," the ballot title will likewise be insufficient. Bailey, 318 Ark. at 285.
It should perhaps also be noted with respect to the particular initiative in this instance that there is precedent for the court's rejection of a ballot title based essentially upon the expansiveness of the text of the proposal. In the recent case of Page v. McCuen, 318 Ark. 342,884 S.W.2d 951 (1994), the Arkansas Supreme Court found that the proposal was "so all-encompassing" and "so expansive" that it precluded an acceptable ballot title (318 Ark. at 347); that is, all of the "substantive and important provisions" could not be included without yielding a ballot title so "complex, detailed and lengthy" that voters would be unable to vote intelligently within the time allowed in the voting booth. Id. at 345, 347. The court had previously noted that while neither the length nor the complexity of the ballot title is a controlling factor, it is a consideration. Newton v. Hall, 196 Ark. 930, 120 S.W.2d 364 (1938) andDust v. Riviere, 277 Ark. 1, 638 S.W.2d 663 (1982), cited in ChristianCivic Action Comm. v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994).
In this regard, the considerable length of the present ballot title concerns me. But I believe the length cannot be avoided due to the detailed nature of the proposed amendment. It should also be recognized in this regard that there is no clearly discernible test for determining what constitutes a "serious omission." Page v. McCuen, 318 Ark. at 347. Thus, in my opinion, with any proposed initiative similar in length to the one submitted in this instance, the sponsor runs the risk of an unacceptable ballot title.
On the other hand, I am reluctant to follow the only other option, presented in Page v. McCuen, supra, of rejecting your submission based upon the substance of the proposed amendment. This drastic action essentially usurps the right of the initiative under Ark. Const. amend.7, and should, in my opinion, only be resorted to in the most extreme case.
Bearing in mind the foregoing, therefore, the popular name is approved as submitted and I hereby certify the following substituted ballot title. It should be recognized, however, that this title may be susceptible to a challenge, given the detail included in the proposed amendment and the court's refusal to accord a presumption of sufficiency following my certification. See Bailey v. McCuen, supra.
 (Ballot Title) AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING LOTTERY TICKET GAMES, CHARITABLE BINGO, RAFFLES, AND TWENTY-FIVE CENT VIDEO TERMINAL GAMES; CREATING A SEVEN-MEMBER ARKANSAS LOTTERY COMMISSION TO BE APPOINTED BY THE GOVERNOR, SUBJECT TO CONFIRMATION BY THE SENATE, TO ESTABLISH AND CONDUCT THE LOTTERY TICKET GAMES AND TO REGULATE CHARITABLE BINGO, RAFFLES AND VIDEO TERMINAL GAMES AUTHORIZED BY THE AMENDMENT; PROVIDING THAT THE COMMISSION SHALL APPOINT A DIRECTOR TO DIRECT THE OPERATIONS OF THE LOTTERY TICKET GAMES; AUTHORIZING THE COMMISSION TO SPECIFY WHAT LOTTERY TICKET GAMES MAY BE CONDUCTED AND TO REGULATE THE SELECTION OF RETAIL ORGANIZATIONS AUTHORIZED TO SELL LOTTERY TICKETS; PROHIBITING LOTTERY TICKET SALES TO ANYONE UNDER 21 YEARS OF AGE OR THROUGH ANY PURCHASER OPERATED SYSTEM; PROVIDED THAT THE REVENUES FROM THE STATE LOTTERY WILL BE ALLOCATED AS FOLLOWS: AN AVERAGE OF 50 PERCENT IN PRIZES TO PLAYERS; 32 PERCENT TO FUND THE ARKANSAS LOTTERY PHARMACEUTICAL ASSISTANCE PROGRAM FOR MATURE ARKANSANS TO ASSIST WITH THE COST OF PRESCRIPTION MEDICINES FOR THOSE WHO MEET THE AGE, INCOME AND HARDSHIP QUALIFICATION; 10 PERCENT TO THE ARKANSAS LOTTERY COMMISSION TO COVER COSTS OF ADMINISTERING THE ARKANSAS LOTTERY AND REPAYMENT OF START-UP FINANCING WITH ANY REMAINING BALANCE TO BE APPLIED TO THE ARKANSAS LOTTERY PHARMACEUTICAL ASSISTANCE PROGRAM FOR MATURE ARKANSANS; AND 8 PERCENT TO ARKANSAS LOTTERY RETAILERS IN PROPORTION TO THE RETAILER'S SALE OF LOTTERY TICKETS; PROVIDING THAT CHARITABLE BINGO GAMES AND RAFFLES MAY BE CONDUCTED BY ANY NON-PROFIT, TAX-EXEMPT RELIGIOUS, EDUCATION, VETERANS', FRATERNAL, SERVICE, CIVIC, MEDICAL, VOLUNTEER RESCUE SERVICE, FIREFIGHTERS', VOLUNTEER POLICE ORGANIZATION OR OTHER ORGANIZATION WHICH HAS BEEN IN EXISTENCE IN THIS STATE FOR NOT LESS THAN THREE (3) YEARS AND WHICH HAS BEEN ISSUED A CURRENT LICENSE TO CONDUCT THE GAMES; RESTRICTING THE HOURS THAT BINGO GAMES AUTHORIZED BY THIS AMENDMENT MAY BE CONDUCTED; REQUIRING ALL NET RECEIPTS EXCEEDING THE ACTUAL COST OF CONDUCTING A BINGO GAME OR RAFFLES TO BE USED ONLY FOR CHARITABLE, RELIGIOUS OR PHILANTHROPIC PURPOSES; PROVIDING THAT THE ARKANSAS LOTTERY COMMISSION SHALL PROMULGATE RULES AND REGULATIONS FOR LICENSING, MONITORING AND ENFORCEMENT FOR THE PLACEMENT AND OPERATION OF VIDEO TERMINALS IN ARKANSAS; PROVIDING THAT THE GAMES OF BINGO, KENO AND POKER ARE INITIALLY AUTHORIZED TO BE PLAYED ON THE VIDEO TERMINALS AUTHORIZED BY THE AMENDMENT; PROHIBITING PLAY OF VIDEO TERMINAL GAMES BY ANYONE UNDER 21 YEARS OF AGE; PROVIDING THAT VIDEO TERMINAL GAMING MEANS AN ELECTRONIC VIDEO GAME THAT, UPON INSERTION OF TWENTY-FIVE CENT COINS, PROVIDES CREDITS TO PLAY OR SIMULATE THE PLAY OF AUTHORIZED GAMES AND THAT ISSUES A PAY SLIP TO A WINNING PLAYER THAT MAY BE REDEEMED FOR CASH; RESTRICTING THE PLACEMENT OF SUCH VIDEO TERMINALS TO PARI-MUTUEL FRANCHISEES AUTHORIZED TO CONDUCT HORSE RACING OR GREYHOUND RACING AND TO CERTAIN PREMISES WHICH MEET PERMIT REQUIREMENTS OF THE ARKANSAS ALCOHOLIC BEVERAGE CONTROL BOARD'S RULES AND REGULATIONS; LIMITING THE NUMBER OF VIDEO TERMINALS THAT MAY BE LOCATED AT THE AUTHORIZED LOCATIONS; PROVIDING THAT THE ARKANSAS LOTTERY COMMISSION AND THE ARKANSAS STATE POLICE LOTTERY DIVISION TO BE CREATED WILL ADMINISTER THE LICENSING PROGRAM CONNECTED WITH VIDEO TERMINAL GAMES; PROVIDING THAT THE ARKANSAS STATE POLICE LOTTERY DIVISION WILL MONITOR VIDEO TERMINAL GAMES ACCORDING TO GUIDELINES ESTABLISHED BY THE ARKANSAS LOTTERY COMMISSION; PROVIDING THAT LOTTERY SYSTEMS, INC., A PRIVATE ARKANSAS CORPORATION, SHALL SERVE AS THE SOLE AND EXCLUSIVE OPERATOR FOR ALL VIDEO TERMINAL GAMES IN THE STATE AND AS SUCH SHALL OWN, PLACE, INSTALL, SERVICE AND MAINTAIN THE VIDEO TERMINALS; PROVIDING THAT LOTTERY SYSTEMS, INC., WILL SUPPLY THE START-UP FINANCING FOR THE ARKANSAS LOTTERY COMMISSION, THE ARKANSAS LOTTERY TICKET GAMES, THE ARKANSAS STATE POLICE DIVISION, AND THE VIDEO TERMINAL GAMES, SUBJECT TO LOTTERY SYSTEMS, INC. BEING REPAID, EXCEPT FOR COST OF VIDEO TERMINAL GAMES, WITH INTEREST BY THE ARKANSAS LOTTERY COMMISSION WITHIN FIVE (5) YEARS FROM THE DATE OF INITIAL FINANCING FROM LOTTERY GROSS REVENUES AND LICENSING FEES; REQUIRING THAT LOTTERY SYSTEMS, INC. NOT BE REQUIRED TO PROVIDE MORE THAN $65,000,000 FOR THE COMBINED COSTS OF START-UP FINANCING; AND FOR PROCUREMENT, LICENSING AND INSTALLATION OF VIDEO TERMINAL MACHINES; REQUIRING LOTTERY SYSTEMS, INC., BETWEEN START-UP AND SIX MONTHS AFTER THE CONCLUSION OF THE FIVE-YEAR START-UP PERIOD TO CAUSE ALL OF ITS STOCKHOLDERS TO MAKE A PUBLIC OFFERING OF ALL OF THEIR OWNERSHIP TO THE PUBLIC THROUGH LICENSED ARKANSAS SECURITY DEALERS; PROVIDING THAT IF LOTTERY SYSTEMS, INC. FAILS TO PROVIDE THE START-UP FINANCING, THE ARKANSAS LOTTERY COMMISSION SHALL DETERMINE A SUBSTITUTE METHOD FOR IMPLEMENTING THE PROVISIONS OF THIS AMENDMENT; PROVIDING THAT THE VIDEO TERMINAL LICENSING FEES BE FIRST ALLOCATED TO FUND 100 PERCENT (100%) OF THE BUDGET OF THE ARKANSAS STATE POLICE LOTTERY DIVISION WITH THE BALANCE NEXT APPLIED TO FUNDING ONE-HALF OF THE ARKANSAS LOTTERY COMMISSION BUDGET; PROVIDING THAT THE VIDEO TERMINAL GROSS REVENUES SHALL BE ALLOCATED AS FOLLOWS: AN AVERAGE OF 88 PERCENT TO PLAYERS; 3 PERCENT THE FIRST YEAR, 3.6 PERCENT THE SECOND YEAR, AND 4.2 PERCENT THE THIRD YEAR AND 4.8 PERCENT THE FOURTH AND SUBSEQUENT YEARS TO LOCAL POLICE AND SHERIFFS' DEPARTMENTS, STATE GENERAL EDUCATION FUND AND HIGHER EDUCATION FUND AND TO NON-GOVERNMENTAL DIRECT SERVICE SHELTER ORGANIZATIONS TO COMBAT DOMESTIC VIOLENCE; 4.2 PERCENT THE FIRST YEAR, 3.72 PERCENT THE SECOND YEAR, 3.84 PERCENT THE THIRD YEAR AND 3.6 PERCENT THE FOURTH AND SUBSEQUENT YEARS TO THOSE ESTABLISHMENTS LICENSED AND AUTHORIZED TO PLACE VIDEO TERMINAL GAMES ON THEIR PREMISES; AND 4.8 PERCENT THE FIRST YEAR, 4.68 PERCENT THE SECOND YEAR, 3.96 PERCENT THE THIRD YEAR AND 3.6 PERCENT THE FOURTH AND SUBSEQUENT YEARS TO LOTTERY SYSTEMS, INC.; PROHIBITING THE IMPOSITION OF ANY STATE OR LOCAL INCOME AND SALES TAX UPON ANY PRIZE WINNINGS FROM GAMES AUTHORIZED BY THE AMENDMENT; PROHIBITING ANY STATE OR LOCAL TAX OF ANY KIND UPON THE FEES OR REVENUES GENERATED PURSUANT TO THIS AMENDMENT OR UPON ANY ASPECT OF THE LOTTERY GAMES AUTHORIZED BY THE AMENDMENT; MAKING THE AMENDMENT EFFECTIVE UPON PASSAGE, RENDERING ITS PROVISIONS SEVERABLE, AND REPEALING ALL EXISTING LAWS AND CONSTITUTIONAL PROVISIONS TO THE EXTENT THEY CONFLICT WITH THIS AMENDMENT; PROVIDING THAT THIS AMENDMENT IS SELF-EXECUTING; AND FOR OTHER PURPOSES.
Pursuant to A.C.A. § 7-9-108, instructions to canvassers and signers are enclosed herewith.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh