Monty SCOTT, Bob Wheeler, Eric Jackson, Bill Walmsley, and
Bill Goodwin, Individually and On Behalf of the Committee
Against Amendment 8, and All Others Similarly Situated,
Petitioners *v.* Sharon PRIEST, Secretary of State of the State of
Arkansas, Respondent; The Local Option Casino and Arkansas
Lottery Committee, Intervenor

96-1078                                        932 S.W.2d 746

Supreme Court of Arkansas
Opinion delivered October 21, 1996

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Beverly A. Rowlett*, for petitioners.

*Winston Bryant*, Att'y Gen., by: *M. Wade Hodge*, Asst. Att'y Gen., for respondent.

*Kaplan, Brewer and Maxey, P.A.*, by: *Philip E. Kaplan*, and *Silas H. Brewer, Jr.*, for intervenor.

TOM GLAZE, Justice. Petitioners Monty Scott and others bring this original action challenging the validity of the ballot title to proposed Amendment 8, which would allow the establishment of up to eleven gambling casinos in the state, and legalize lottery, charitable raffles, and bingo games in the state. Petitioners generally contend the ballot title is too long, complex, and detailed to permit a voter to read and comprehend the proposed amendment and make an informed decision on the proposal. Petitioners recognize this court's prior holdings that length, in itself, does not render a ballot title insufficient, *Christian Civic Action Comm.* v. *McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994); *Parker* v. *Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996). However, they submit that here, like in *Page* v. *McCuen*, 318 Ark. 342, 884 S.W.2d 951 (1994), the length of the proposed amendment necessarily caused the proposal's sponsors to omit important provisions of the proposal when preparing the ballot title. Although the proposed Amendment 8 is twenty pages long, and its sponsors took approximately 550 words in the ballot title to summarize seventy-five subsections contained in the proposal, we hold the length alone would not render the title invalid. However, we agree that there are numerous material omissions

from the ballot title that clearly prevent a fair understanding of the amendment and would give the voter "serious ground for reflection" on whether to vote for the measure. *Id.*, 344-345.

Since *Page*, this court has decided a number of cases dealing with ballot initiatives and challenges to their validity under Amendment 7. The most recent decision is *Parker v. Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996), where this court summarized, as follows, the standards of review for ballot titles: (1) ballot titles must include an impartial summary of the proposed amendment that will give voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law; (2) they cannot omit material information that would give the voter serious ground for reflection; and (3) they must be free from misleading tendencies that, whether by amplification, omission, or fallacy, thwart a fair understanding of the issues presented. *Id.* (citations omitted).

In *Parker*, this court refused injunctive relief and allowed a proposed amendment to remain on the ballot where the ballot title was 482 words in length, but the title accurately and completely summarized the text of the proposed amendment. We further took particular note that the language used was plain and organized in a coherent manner, and that no material omissions occurred to make the ballot title misleading. Unfortunately, that is not the situation before us in the present case.

Petitioners initially point out that proposed Amendment 8 provides for casino gambling in the counties of Boone, Chicot, and Garland without the voters first being given the right to approve such gambling at a local-option election. They further note that the licensee at each designated site in these three counties are guaranteed gaming benefits upon the proposal's adoption at the November 5, 1996 General Election. However, eight other casino enterprises are authorized under proposed Amendment 8 only after approval of the voters of the county or counties where those enterprises are to be located. The ballot title fails to mention this preferential treatment given the three licensees in Boone, Chicot, and Garland counties, and we believe this omission would give the voters serious ground for reflection on whether to vote for the measure.

Another point concerning the local-option elections is that the

proposed amendment changes existing law by requiring that 20% of the qualified voters in a county approve casino gambling. Presently, Amendment 7 to the Arkansas Constitution requires only 15% of the legal voters of the county to pass a local-initiative measure. Petitioners submit that, while the ballot title informs the voter of the 20% requirement, it fails to disclose that that percentage is higher than the requirement under Amendment 7. In addition, petitioners suggest this change in the law places later casino applicants at a greater disadvantage than the initial licensees who are exempt from the local-option requirement altogether.

The petitioners cite *Bradley* v. *Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952), where this court granted injunctive relief based on the insufficiency of the ballot title. There, the title failed to disclose that the proposed amendment would legalize service charges and price differentials that previously had been usurious. The *Bradley* court stated the following:

> It is evident that before determining the sufficiency of the present ballot title we must first ascertain what changes in the law would be brought about by the adoption of the proposed amendment. For the elector, in voting upon a constitutional amendment, is simply making a choice between retention of the existing law and the substitution of something new. It is the function of the ballot title to provide information concerning the choice that he is called upon to make. Hence the adequacy of the title is directly related to the degree to which it enlightens the voter with reference to the changes that he is given the opportunity of approving. *Id.* at 927

In this case, the percentage requirement proposed in Amendment 8 conflicts with the one in our present Amendment 7. Because the ballot title fails to convey this change so that the voters could have a fair understanding of the issue, we conclude this nondisclosure adds to the title's invalidity.

A third omission in the ballot title is its failure to reveal the proposal's definition of "Gross Gambling Revenue." Proposed Amendment 8 provides casinos must pay state taxes of 8% on their gross gambling revenues, and municipal and county taxes of up to 2% on such revenues. The definition is of obvious import when calculating the amount of taxes owed by a licensee. In this instance,

the proposal defines gross gambling revenues not as the total (or gross) amount of all monies received from casino gambling operations, but instead it is defined to be all monies received from *casino* gambling *less* all winnings paid out. Undoubtedly, voters could be misled concerning how much of the gambling revenues would be taxed. Furthermore, voters also would be confused as to whether lottery revenues, legalized by proposed Amendment 8, would be taxed as well. Under the proposal, they would not, but the ballot title does not reveal that fact.

■ Another serious error in the ballot title concerns its representation that "no more than eleven licensed casinos may be simultaneously operated" in the state. Section 7 of the proposed amendment makes a fair attempt to restrict the number of licensed casinos in operation at one time to eleven, but Section 1(D) authorizes "casino gambling in *other* constitutional amendments" as well. (Emphasis added.) In other words, if "other" constitutional amendments include the other initiative proposals on the same ballot, this Section 1(D) provision conflicts with the existing law in Amendment 7, which provides as follows:

> If conflicting measures initiated or referred to the people shall be approved by a majority of the votes severally cast for and against the same at the same election, the one receiving the highest number of affirmative votes shall become law.

In sum, while Section 1(D) was likely intended only to assure the continued validity of proposed Amendment 8, regardless of what happened to other casino proposals offered voters at the November 5 General Election, it is clear Arkansas could well end up with more than eleven casinos if another gambling proposal besides proposed number 8 is enacted.

■ Petitioners further urge the ballot title fails to disclose that proposed Amendment 8 allows its initial licensees to compete with Oaklawn and Southland by permitting them to engage immediately in "simulcast sport wagering," but the two existing pari-mutuel gambling enterprises are not allowed to offer casino gambling until November 1998. We agree. Certainly, this unequal edge in treatment given the new casino licensees is not revealed in the ballot title and could well make a difference in the voters' decision when voting on the proposal.

■ While petitioners argue more than ten other possible

omissions would mislead the voters when casting their votes for or against proposed Amendment 8, we see no need to discuss more than the ones mentioned above. We summarize much as we did in *Page*, that the proposed Amendment 8 sponsors' insistence in covering the establishment and operation of casino gaming in so much detail can be said to have sounded the proposal's own death knell. *Page*, 318 Ark. at 347. While Amendment 7 does not limit the length of a proposal, the proposed measure must be of a size capable of having a ballot title which will not only convey the scope and import of the measure, but also impart a description of the proposal so voters can cast their votes intelligently and with a fair understanding of the issue. *Id.* at 347. In this respect, we hold the ballot title now before us fails.

■ This is a good point to emphasize our earlier request of the General Assembly in *Page* v. *McCuen* to attempt to establish a constitutional initiative and referendum procedure that will permit an early resolution of ballot-title cases. We stated the following:

> Until appropriate action is taken to correct the problems attendant to proposals submitted under Amendment 7, citizens can continue to expect measures to be removed from the ballot immediately prior to the election. This court does not enjoy being in the "last-minute" position of review. The people of Arkansas deserve an initiative and referendum procedure which allows them the confidence that measures, after having been adequately reviewed, will not be removed from the ballot. The sponsors of initiative proposals should also be assured their ballot titles and proposed measures meet required guidelines and rules before they spend their time, energy and monies in getting their proposal before the voters.

*See also Finn* v. *McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990), (court held unconstitutional Act 280 of 1989, which provided by statute an early procedure to review ballot titles). The General Assembly responsibly responded by referring for a vote of the people proposed Amendment 3[1] which, if approved by the voters at the November 5, 1996 General Election, will provide a procedure,

---

[1] This proposed Amendment 3 is essentially the same as Act 280 of 1989, ruled unconstitutional by this court in *Finn*, 303 Ark. 418.

assuring voters that the petitions they sign will actually place the measure on the next General Election ballot, if the sponsors obtain the necessary number of signatures. Meanwhile, under present law as provided in Amendment 7, we declare the ballot title to proposed Amendment 8 insufficient and invalid and enjoin its placement on the ballot, or alternatively that any votes cast on such proposal not be counted or certified.

The court shortens the time for issuance of mandate, and directs that any petition for rehearing must be filed on or before Friday, October 25, 1996.

Doddridge M. Daggett, Special Justice, concurs, and would further cite as cause for striking Amendment 8 the recent decision of *Parker* v. *Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996), in which the court stated:

> They (the drafters of the ballot title) cannot omit material information that would give the voter serious ground for reflection.

In my opinion, Amendment 8 would create a virtual monopoly, or near monopoly, for the individuals or entities owning the real estate onto which casinos can be constructed. I believe that it is a serious and fatal omission of material information to not list the owners of the proposed casinos or the owners of the real estate. Casino gambling, and all of the good or bad things that it may bring to our state, will have a tremendous economic and social impact upon the citizens of the state. The citizens are entitled to know who will profit from this amendment to our constitution.

DUDLEY, J., not participating; BROWN, J., dissents.

ROBERT L. BROWN, Justice, dissenting. Proposed Amendment 4 and Proposed Amendment 8 both authorize a state lottery, charitable bingo, and casino gambling. Proposed Amendment 4 authorizes three casino establishments in Hot Springs with one adjacent to the Oaklawn Racetrack. Proposed Amendment 8 authorizes casino gambling at five sites throughout the state, including the two existing pari-mutuel tracks, with six additional sites subject to local-option elections. This court has approved Proposed Amendment 4 for the ballot. *Parker* v. *Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996). It now enjoins placement of Proposed Amendment 8 on the ballot. I believe the people should have the right to choose between these

competing proposals.

In the past, I have voted to strike misleading proposals from the ballot. *See, e.g., Christian Civic Action Comm. v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994) (the term "additional racetrack wagering" did not sufficiently inform the voters of casino gambling); *Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994) (misleading language on restriction of legal fees and omission of standard for review in workers' compensation cases). The misleading tendency in those two cases was serious, and the omissions would have given voters a serious ground for reflection. Here, the deficiencies espoused by the majority do not approach that degree of significance.

I first question whether the ballot title is misleading with respect to sites for casino gambling in designated counties versus local-option counties. The ballot title reads:

> AUTHORIZING CASINO GAMBLING AS AN AP-PROPRIATE LAND USE BY LICENSEES APPROVED BY THE COMMISSION AT: ONE (1) PREVIOUSLY CHOSEN SPECIFIC SITE, AS SET FORTH BY LEGAL DESCRIPTION IN THIS AMENDMENT, IN EACH OF BOONE, GARLAND, AND CHICOT COUNTIES; THREE (3) ADDITIONAL LICENSES, ONE (1) IN PU-LASKI AT A PREVIOUSLY CHOSEN SITE SET FORTH BY LEGAL DESCRIPTION IN THIS AMEND-MENT, ONE (1) IN GARLAND AND ONE IN MILLER COUNTIES IF APPROVED BY COUNTY LOCAL OPTION ELECTIONS; THREE (3) AT-LARGE LICENSES IN ANY COUNTY IF APPROVED BY THE COMMISSION AND BY COUNTY LOCAL OPTION; AND AT THE TWO EXISTING PARI-MUTUEL TRACKS AFTER NOVEMBER 1, 1998;

The language appears sufficiently clear and unambiguous. Casino gambling is approved in Boone, Garland, and Chicot Counties, as well as at the pari-mutuel tracks. It can also be approved in Pulaski, Garland (a second site), and Miller Counties by local-option elections, and at sites in three other counties, also by local-option elections. I do not see any confusion here.

Nor do the other deficiencies asserted qualify as misleading or as serious omissions:

— The ballot title does provide for a local-option election upon petition by 20% of the qualified voters in a county. That is a more stringent requirement than the general requirement of a petition by 15% of the voters contained in Amendment 7 to the Arkansas Constitution. I see nothing amiss in requiring a stricter standard for calling local-option elections for casino gambling when the standard is disclosed in the ballot title.

— The ballot title reveals state taxes on gross gambling revenue which the proposed amendment defines as revenue to the casino after winnings are paid out. This seems reasonable. Net revenue would be revenue remaining after ordinary expenses (rent, payroll, and so forth) are also deducted. I see nothing fatal to the ballot title in this regard.

— Proposed Amendment 8 limits the number of casinos to eleven. Language in the proposed amendment allows casinos authorized in other constitutional amendments to be counted toward that total. The maximum number is still eleven. This effort to meld Proposed Amendment 8 to other proposals should not result in its elimination from the ballot. If there is an irreconcilable conflict between two amendments that pass, Amendment 7 to the Arkansas Constitution provides that the one receiving the greater number of votes becomes law.

— The proposed amendment allows initial casino licensees to offer simulcast gambling immediately which Oaklawn Racetrack, at least, is now doing. Oaklawn and Southland must wait to offer casino gambling until November 1998. Presumably, the idea is that it will take time for the initial licensees to set up their operations, whereas Oaklawn and Southland are already operational. The attempt appears to be to place all operators on an equal footing. I do not find this to be unreasonable or necessary for placement in the ballot title.

In short, I fail to see the serious deficiencies embraced by the majority. This is the first instance that I can find where one competing ballot issue was struck and one was left on the ballot. I am reluctant to leave Proposed Amendment 4 on the ballot and strike Proposed Amendment 8 under these circumstances, where the lit-

338

any of deficiencies is so weak. This court has stated:

> Our most significant rule is that in determining the sufficiency of the title *we give a liberal construction and interpretation* of the requirements of Amendment 7 in order to secure its purposes to reserve to the people the right to adopt, reject, approve, or disapprove legislation.

*Gaines* v. *McCuen*, 296 Ark. 513, 519, 758 S.W.2d 403, 406 (1988) (emphasis in original); *see also Bailey* v. *McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994); *Plugge* v. *McCuen*, 310 Ark. 654, 841 S.W.2d 139 (1992); *Finn* v. *McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990).

I respectfully dissent.