Ronald A. MAY, Susan E. May, and Gayle Bradford *v.*
Charlie DANIELS, in his Official Capacity as Secretary of State
of the State of Arkansas

Jerry Cox and Chris Stewart, Individually and on Behalf of the
Arkansas Marriage Amendment Committee, *Intervenors*

04-895 194 S.W.3d 771

Supreme Court of Arkansas
Opinion delivered October 7, 2004

*N. M. Norton* and *Blake S. Rutherford*, on behalf of the Arkansas Civil Liberties Union Foundation, Inc.; and Arkansas Civil Liberties Union Foundation, Inc., by: *Griffin J. Stockley*, for petitioners.

*Mike Beebe*, Att'y Gen., by: *Timothy G. Gauger*, Sr. Ass't Att'y Gen., for respondent.

*Martha Adcock*, for intervenors Arkansas Marriage Amendment Committee.

DONALD L. CORBIN, Justice. Petitioners Ronald A. May, Susan E. May, and Gayle Bradford have filed an original action asking this court to declare the popular name and ballot title of Proposed Amendment 3 insufficient and to enjoin Respondent Arkansas Secretary of State Charlie Daniels from placing the measure on the ballot for the November 2, 2004 General Election. The proposed amendment is sponsored by Intervenors Jerry Cox and Chris Stewart, acting individually and on behalf of the Arkansas Marriage Amendment Committee. Our jurisdiction to determine this matter is pursuant to Amendment 7 to the Arkansas Constitution and Ark. Sup. Ct. R. 6-5(a). We deny the petition.

The text of Proposed Amendment 3 is as follows:

SECTION 1: Marriage

Marriage consists only of the union of one man and one woman.

SECTION 2: Marital Status

Legal status for unmarried persons which is identical or substantially similar to marital status shall not be valid or recognized in Arkansas, except that the Legislature may recognize a common law marriage from another state between a man and a woman.

SECTION 3: Capacity, rights, obligations, privileges, and immunities

The Legislature has the power to determine the capacity of persons to marry, subject to this amendment, and the legal rights, obligations, privileges, and immunities of marriage.

The initiative's popular name is "AN AMENDMENT CONCERNING MARRIAGE." Its ballot title, which mirrors the text of the initiative, is as follows:

A PROPOSED AMENDMENT TO THE ARKANSAS CONSTITUTION PROVIDING THAT MARRIAGE CONSISTS ONLY OF THE UNION OF ONE MAN AND ONE WOMAN; THAT LEGAL STATUS FOR UNMARRIED PERSONS[1] WHICH IS IDENTICAL OR SUBSTANTIALLY SIMILAR TO MARITAL STATUS SHALL NOT BE VALID OR RECOGNIZED IN ARKANSAS, EXCEPT THAT THE LEGISLATURE MAY RECOGNIZE A COMMON LAW MARRIAGE FROM ANOTHER STATE BETWEEN A MAN AND A WOMAN; AND THAT THE LEGISLATURE HAS THE POWER TO DETERMINE THE CAPACITY OF PERSONS TO MARRY, SUBJECT TO THIS AMENDMENT, AND THE LEGAL RIGHTS, OBLIGATIONS, PRIVILEGES, AND IMMUNITIES OF MARRIAGE.

On March 12, 2004, the Attorney General issued an opinion approving the popular name and ballot title and concluding that they accurately and impartially summarize the provisions of the

---

[1] The letter of certification from Respondent Secretary of State uses the singular "PERSON," while the Attorney General's opinion, No. 2004-081, uses the plural "PERSONS." The parties use the plural term; hence, we will do so as well.

proposed amendment. That same date, Respondent also certified the sufficiency of the popular name and ballot title. Thereafter, Intervenors collected sufficient signatures to place the proposed amendment on the ballot. On July 22, Respondent announced that the signatures were sufficient and certified the proposed amendment to be placed on the ballot for the November 2 General Election. Petitioners filed this original action on August 26, and we heard oral argument on September 23.

Petitioners note at the outset that they are not challenging the wisdom or folly of the proposed amendment, as they concede that such a challenge is not proper at this time. Rather, they challenge the sufficiency of the information supplied to the voters in the measure's popular name and ballot title. They argue that the popular name is insufficient because it contains partisan language and misleads the voter into believing that the proposed amendment deals exclusively with marriage. As for the ballot title, Petitioners argue that it is vague and misleading and that it does not inform voters of the consequences of voting for the proposed amendment.

## I. Popular Name

For their first point, Petitioners argue that the popular name, "An Amendment Concerning Marriage," is misleading because it deceptively and inaccurately declares that the amendment only addresses marriage, while it actually has a broader effect. They contend that although the popular name adequately describes Section 1 of the proposed amendment, it ignores Sections 2 and 3.

The standard for reviewing an initiative's popular name is well settled. The popular name is primarily a useful legislative device that need not contain the same detailed information or include exceptions that might be required of a ballot title. *Parker v. Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996). Its purpose is to identify the proposal for discussion prior to the election. *Roberts v. Priest*, 341 Ark. 813, 20 S.W.3d 376 (2000); *Arkansas Women's Political Caucus v. Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984). The popular name is not held to the same stringent standards and need not be as explicit as a ballot title; however, it cannot contain catch phrases or slogans that tend to mislead or give partisan coloring to a proposal. *Id.* Thus, the popular name must be intelligible, honest, and impartial. *Gaines v. McCuen*, 296 Ark. 513,

758 S.W.2d 403 (1988). This court considers the popular name along with the ballot title in determining its sufficiency. *Roberts*, 341 Ark. 813, 20 S.W.3d 376.

Petitioners argue that the popular name, "An Amendment Concerning Marriage," only describes Section 1 of the proposed amendment, which states that "Marriage consists only of the union of one man and one woman[.]" They argue that the popular name omits any information regarding the limitations that the amendment will impose on the rights of unmarried couples or single persons or of the impact that the amendment will have on the legal recognition of any future union or partnership. They also argue that the word "marriage" is an inviting catchword, and that its use in this popular name is misleading in that very few persons would vote against marriage, even though they may be in favor of other types of relationships.

Petitioners rely heavily on the holding in *Arkansas Women's Political Caucus*, 283 Ark. 463, 677 S.W.2d 846, wherein this court struck a proposed amendment from the ballot on the ground that its popular name, "The Unborn Child Amendment," was misleading, contained partisan language, and omitted pertinent information. This court explained:

> *More significantly, the enactment of the proposed amendment would do two things, equally far-reaching: it would immediately prohibit the use of public funds for abortion*, including a female impregnated by rape or incest, unless the life of the mother were in danger; *and two, it would empower the General Assembly to prohibit abortion under any circumstances to the extent permitted under the Constitution of the United States. Yet, the popular name makes no reference whatsoever to this emotionally charged subject. Instead, the ballot name contains only the inviting catch words "unborn child," which gives the voters only the impression the proponents of the amendment want them to have. Very few would vote against a child, born or unborn, even though they are for a woman's right to have an abortion or for the state paying for it.* The popular name is a clear-cut example of the partisan coloring of ballots which we have uniformly condemned in our decisions holding that a ballot name must be fair and impartial.

*Id.* at 468, 677 S.W.2d at 849 (emphasis added).

 Petitioners' reliance on *Arkansas Women's Political Caucus*, is misplaced. The popular name of Proposed Amendment

3, "An Amendment Concerning Marriage," clearly and concisely identifies the measure to the voters. It is intelligible, honest, and impartial and does not contain inflammatory language, political catchwords, or partisan coloring. It merely alerts the voters to the subject on which they will be voting, without attempting to influence them one way or the other. Contrary to Petitioners' urging, we do not believe that the term "marriage" evokes the same type of emotional reaction as the phrase "unborn child."

■ Moreover, there is no merit to Petitioners' suggestion that only Section 1 of the proposed amendment concerns the subject of marriage. Section 3 plainly concerns marriage by providing that the legislature has the power to determine the capacity of persons to marry and the rights, obligations, privileges, and immunities of marriage. Even Section 2 concerns marriage in that it prohibits recognition of marital status for unmarried persons, except that the legislature may recognize certain common law marriages. We thus reject Petitioners' argument on the sufficiency of the popular name.

## II. Ballot Title

Petitioners next argue that the ballot title for Proposed Amendment 3 is vague and misleading and fails to inform the voters of the consequences of voting for the proposed amendment. They also argue that the title fails to disclose to the voters the full scope of the proposed amendment and its impact on current laws. We begin our analyses with a review of the law regarding the sufficiency of ballot titles.

The ballot title must be an impartial summary of the proposed amendment and it must give voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law. *Scott v. Priest*, 326 Ark. 328, 932 S.W.2d 746 (1996); *Parker*, 326 Ark. 123, 930 S.W.2d 322. It must be free from misleading tendencies that, whether by amplification, omission, or fallacy, thwart a fair understanding of the issues presented. *Id.* It cannot omit material information that would give the voters serious ground for reflection. *Id.* While it is not required that the ballot title contain a synopsis of the amendment, it is required that the title be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Roberts*, 341 Ark. 813, 20 S.W.3d 376; *Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938

(1994). Thus, it must be intelligible, honest, and impartial so that it informs the voters with such clarity that they can cast their ballots with a fair understanding of the issues presented. *Id.* This court has long recognized the impossibility of preparing a ballot title that would suit everyone. *Parker,* 326 Ark. 123, 930 S.W.2d 322; *Hogan v. Hall,* 198 Ark. 681, 130 S.W.2d 716 (1939). Thus, the ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote based on the ballot title. *Roberts,* 341 Ark. 813, 20 S.W.3d 376; *Christian Civic Action Comm. v. McCuen,* 318 Ark. 241, 884 S.W.2d 605 (1994).

The issue of the sufficiency of a ballot title is a matter of law to be decided by this court. *Bailey,* 318 Ark. 277, 884 S.W.2d 938. Thus, we will consider the fact of Attorney General certification and attach some significance to it; however, we will not defer to the Attorney General's certification or give it presumptive effect. *Id.* Our most significant rule in determining the sufficiency of the title is that it be given a liberal construction and interpretation in order that it secure the purposes of reserving to the people the right to adopt, reject, approve, or disapprove legislation. *Porter v. Mc-Cuen,* 310 Ark. 562, 839 S.W.2d 512 (1992); *Mason v. Jernigan,* 260 Ark. 385, 540 S.W.2d 851 (1976). It is not our purpose to examine the relative merit or fault of the proposed changes in the law; rather, our function is merely to review the measure to ensure that, if it is presented to the people for consideration in a popular vote, it is presented fairly. *Roberts,* 341 Ark. 813, 20 S.W.3d 376. In other words, "[t]he question is not how the members of this court feel concerning the wisdom of this proposed amendment, but rather whether the requirements for submission of the proposal to the voters have been met." *Ferstl v. McCuen,* 296 Ark. 504, 509, 758 S.W.2d 398, 401 (1988). Ultimately, Amendment 7 places the burden upon the party challenging the ballot title to prove that it is misleading or insufficient. *Roberts,* 341 Ark. 813, 20 S.W.3d 376; *Christian Civic Action Comm.,* 318 Ark. 241, 884 S.W.2d 605. With these standards in mind, we discuss each of the points raised by Petitioners.

### A. *Vague and Misleading Language*

Petitioners first argue that the following phrase in the second clause of the ballot title is vague and misleading: "that legal status

for unmarried persons which is identical or substantially similar to marital status shall not be valid or recognized in Arkansas[.]" They submit that the word "status," as defined in *Black's Law Dictionary*, 1447 (8th ed. 2004), refers to "the sum total of a person's legal rights, duties, liabilities, and other legal relations, or any particular group of them separately considered." They submit that the term "legal status" is commonly used in Arkansas law to classify an individual and identify the legal rights and duties for such a classification, like the legal status of an invitee or a stepparent.

Petitioners submit further that the term "marital status" is vague and open-ended in that it is merely a basis of classification consisting of either "married" or "unmarried." They cite to *Black's Law Dictionary*, 987 (8th ed. 2004) as defining the term as "[t]he condition of being single, married, divorced, or widowed." Given this definition, they contend that the ballot title's second clause prohibits an unmarried person from having a legal status that is identical or substantially similar to that of *either* a married or unmarried person. Thus, they argue that the phrase is vague and nonsensical.

Petitioners also argue that, contrary to what Intervenors may have intended, the term "marital status" does not mean marriage. They argue further that Intervenors could have used that readily understood term, but they chose not to do so. To support their argument, Petitioners cite to various proposed amendments from other states which do not employ the term "marital status."

Both Respondent and Intervenors argue that Petitioners' interpretation of these words is unreasonable and absurd and ignores the context in which they are used. They assert that in the context of an employment application, the term "marital status" may be easily understood as referring to the status of being *either* married, single, divorced, or widowed. However, they assert that the context of this proposed measure enables the voters to understand that "marital status" means the status of being married.

■ We conclude that the term "marital status" is not vague because it can be understood by the voters within the context of the ballot title. The fact that a term is capable of more than one possible meaning does not render the term meaningless, so long as its meaning may be fairly gleaned from the context in which it is used. The entire clause in which this term is found provides:

that legal status for unmarried persons which is identical or substantially similar to marital status shall not be valid or recognized in Arkansas, *except* that the Legislature may recognize a common law *marriage* from another state between a man and a woman. [Emphasis added.]

We agree with Intervenors that the meaning becomes apparent when considering that the one exception to the ban on recognition of legal status for unmarried persons that is identical or substantially similar to marital status is the recognition of common law *marriages* between a man and a woman from another state. We are not persuaded that the voters will view the term with the same degree of technicality as have Petitioners and their attorneys. Indeed, to accept their construction of the ballot title, that the amendment prohibits unmarried persons from having a legal status identical or substantially similar to that of unmarried persons, would lead to an absurd result.

■ Moreover, we observe that the ballot title clearly puts the voters on notice that the passage of this amendment is just the beginning, not the end, of the matter. The proposed amendment is not self-executing. In fact, the third clause of the ballot title reflects that the amendment specifically empowers the General Assembly to pass enabling legislation "to determine the capacity of persons to marry, subject to this amendment, and the legal rights, obligations, privileges, and immunities of marriage." Because the actions of the legislature will occur in the future, an interpretation of the particulars of this amendment is yet to come. The voters are sufficiently informed of this.

In sum, our job is not to review the relative merit or fault of the proposed initiative, nor is it to fashion a perfect or even a better ballot title. Rather, we are to review the ballot title liberally, using common sense, with an eye toward the purpose of Amendment 7, which is to reserve to the people the right to adopt or reject constitutional amendments or legislation. *See Walker v. Priest*, 342 Ark. 410, 29 S.W.3d 657 (2000); *Crochet v. Priest*, 326 Ark. 338, 931 S.W.2d 128 (1996); *Christian Civic Action Comm.*, 318 Ark. 241, 884 S.W.2d 605. This court's holding in *Becker v. Riviere*, 270 Ark. 219, 604 S.W.2d 555 (1980), is instructive:

We must also bear in mind that strict technical construction is not required, but that substantial compliance with Amendment No. 7 is all that is required. As was pointed out in *Hoban v. Hall, Sec'y of*

*State*, 229 Ark. 416, 316 S.W.2d 185 (1958), it is our duty to approve a ballot title "if it represents an impartial summary of the measure and contains enough information to enable the voters to mark their ballots with a fair understanding of the issues presented." Our task is not to require nor draft the perfect proposed popular name and ballot title, but merely to determine if those presented are legally sufficient.

*Id.* at 225-26, 604 S.W.2d at 558 (citation omitted). Thus, while Petitioners may be correct in asserting that the ballot title could have been written more clearly, they have not met their burden of proving that the ballot title is misleading or insufficient. *See Roberts*, 341 Ark. 813, 20 S.W.3d 376; *Christian Civic Action Comm.*, 318 Ark. 241, 884 S.W.2d 605.

### B. *Failure to Disclose Effect on Laws Protecting Both Married and Unmarried Persons*

For their next challenge, Petitioners argue that the ballot title fails to disclose to the voter the effect of the amendment. Specifically, they assert that the voter is not informed that the amendment will allegedly repeal existing laws, such as those that prohibit discrimination against and protect the rights of persons regardless of whether they are married or single. *See, e.g.*, Ark. Code Ann. § 4-87-104 (Repl. 2001); Ark. Code Ann. § 9-3-107 (Repl. 2002). They assert further that Proposed Amendment 3 will impliedly repeal Article 9, § 3, of the Arkansas Constitution, which provides homestead rights to state residents who are either married or the head of a family. They contend that the ballot title's failure to disclose these consequences to the voters renders it insufficient.

We note at the outset that Petitioners have failed to cite any legal authority or make any convincing argument in support of this point. Instead, their argument is based entirely on speculation and conjecture as to how this amendment *may* be interpreted or construed in the future and how it *may* affect current laws. The present case is not like that of *Bailey*, 318 Ark. 277, 884 S.W.2d 938, where the proposed amendment undeniably would have changed the current state of the law, but the ballot title made no mention of the change. There, the text of the proposed

amendment plainly provided that the workers' compensation laws would be interpreted liberally, but the ballot title made no such mention of this liberal interpretation. This court concluded that the ballot title was misleading in omitting this information, on the ground that the amendment would have repealed the current law requiring strict construction. This court held that the omission of this information "would give the voters a serious basis for reflection on how to cast their ballots." *Id.* at 288, 884 S.W.2d at 944.

Nor is this case like that of *Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000), where the ballot title failed to inform the voters of the far-reaching consequences of the measure, which would have, immediately upon its approval, ceased the collection of revenues collected from sales and use taxes on used goods. The ballot title further failed to inform the voters that those lost revenues could not be made up for until the next regularly scheduled statewide election. This court concluded that such information was so significant and material that it would give the voter serious ground for reflection. This court held that because such information was omitted, the ballot title failed to convey to the voters the scope and import of the proposed measure.

█ In the present case, the argument made by Petitioners amounts to nothing more than an assertion that some current laws *may* be affected or even impliedly repealed with the passage of Proposed Amendment 3. Unlike the two cases cited above, the laws allegedly implicated in this case are by no means *certainly* implicated, such that the ballot title must inform the voters of this. Accordingly, the ballot title does not fail in this respect. This court has held that it is not necessary that a ballot title include every possible consequence or impact of a proposed measure. In *Ferstl,* 296 Ark. 504, 510, 758 S.W.2d 398, 401, this court stated unequivocally: "Certainly not every detail of an amendment *or how it will work in every situation* can be revealed in the name and title. It is not possible to do so." (Emphasis added.) More recently, this court has reiterated: "The [ballot] title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke." *Plugge v. McCuen,* 310 Ark. 654, 658, 841 S.W.2d 139, 141 (1992), *overruled in part on other grounds by Bailey,* 318 Ark. 277, 884 S.W.2d 938. The bottom line is that Petitioners' assertions on

this point are too speculative for us to hold that such information is so material that it would give the voter serious ground for reflecting.[2]

■ Before we leave this point, we must address Petitioners' assertion that where the language of the ballot title mirrors that of the amendment itself, this court has no choice but to interpret the amendment. While we agree that in such a situation, our review of the language of one will necessarily result in the review of the other, we do not agree that such a review extends to the prospective application of the amendment. In other words, while we may be required to consider the language of the amendment itself to determine whether a term or phrase in the title is vague or misleading, this does not mean that we will interpret the amendment in the sense of construing or applying it. However, we note that our holding today does not foreclose Petitioners from pursuing this argument in the event the proposed amendment is approved by the voters. Until that time, our review is limited.

### C. Failure to Disclose Prohibition on Legal Relationships Other Than Marriage

Petitioners' third argument is that the ballot title does not inform the voters that a vote for this proposal will prohibit the future recognition of legal relationships between unmarried couples other than marriage, like civil unions or domestic partnerships. In other words, they contend that the ballot title does not inform the voter that the amendment not only bans same-sex *marriage*, but also bans any similar legal relationship between unmarried persons. They contend that by using the phrase "legal status for unmarried persons which is identical or substantially similar to marital status," Intervenors are attempting to cloak the

---

[2] Justice Thornton's dissent illustrates the speculative nature of this inquiry by posing several questions as to how Proposed Amendment 3 "might be interpreted" or "may result" in the loss of some property rights. Undoubtedly, the dissent uses these contingent terms because the proposed measure has yet to be implemented by the General Assembly or interpreted by this court. Notwithstanding, the dissent then concludes that these speculative, possible future occurrences are so significant that they should be disclosed to the voters. It is unclear how the voter can be adequately informed of the alleged consequences of his vote if such consequences have yet to be realized. Apparently, the dissent would prefer that we skip the step of allowing the citizens the right to vote on the measure and jump right into the step of interpreting it.

intended meaning, which is to prohibit civil unions or domestic partnerships. They rely on this court's holdings in *Christian Civic Action Comm.*, 318 Ark. 241, 884 S.W.2d 605, *Crochet*, 326 Ark. 338, 931 S.W.2d 128, and *Kurrus*, 342 Ark. 434, 29 S.W.3d 669.

In *Christian Civic Action Comm.*, 318 Ark. 241, 884 S.W.2d 605, this court struck a proposed measure from the ballot in part due to the misleading term "additional racetrack wagering." This court explained:

> It is evident, as the petitioners suggest, that "additional racetrack wagering" is a euphemism and, further, that the definition consists of compounded euphemisms designed to cloak in semantic obscurity the actual nature of the proposed enterprise. *What, in fact, the definition obliquely describes in highly technical terms are the elements of casino-style gambling. Yet voters favoring or opposing the inauguration of casino-style gambling may well be unaware that this is precisely what Amendment 4 seeks to accomplish.*

*Id.* at 249, 884 S.W.2d at 609-10 (emphasis added).

Similarly, in *Crochet*, 326 Ark. 338, 931 S.W.2d 128, this court concluded that the proposed measure's use of the term "video terminal games" was misleading, holding:

> While voters may be able to discern that the term "video terminal games" means slot machines, they should not be forced to guess the meaning of a proposed amendment to their state's constitution. *The very purpose of the ballot title is to convey a fair and impartial understanding of the proposal. To call slot machines "video terminal games," which connotes a present-day video game such as Nintendo or Sega Genesis, is anything but fair and impartial.* Consequently, we conclude that the use of the term "video terminal games" creates a fatally misleading tendency in the popular name and ballot title and tinges them with partisan coloring.

*Id.* at 346-47, 931 S.W.2d at 133 (emphasis added).

Finally, Petitioners rely on this court's statement in *Kurrus*, 342 Ark. 434, 29 S.W.3d 669, that misleading or vague language "placing the voter in a position of either having to be an expert in the subject of [the proposed amendment] or having to guess as to the effect his or her vote would have is impermissible." *Id.* at 444, 29 S.W.3d at 674 (citing *Dust v. Riviere*, 277 Ark. 1, 638 S.W.2d 663 (1982)). Petitioners argue that because Proposed Amendment

3 fails to disclose what particular kinds of relationships will be prohibited by the amendment and leaves the voters to guess what the amendment means, it is, by its own terms, vague and misleading.

Intervenors argue that it is Petitioners who are being unclear. They assert that the terms "civil union" and "domestic partnership" are not legally recognized terms in Arkansas and would not be readily understood by voters. They also assert that, contrary to Petitioners' urging, Proposed Amendment 3 will not prohibit unmarried couples from entering into civil unions or domestic partnerships, so long as these relationships are not marriage by another name. They contend that Proposed Amendment 3 makes clear that whatever alternative forms of marital status other jurisdictions may recognize and by whatever terms such jurisdictions use to identify them, those unions will not be recognized in Arkansas if they are nothing more than marriages with new labels. Intervenors assert that this is a concept that the voters can readily understand.

■ ■ As with the previous point, we conclude that Petitioners' argument on this point requires us to interpret the amendment or, at a minimum, to assume that Petitioners are correct in asserting that the amendment will in fact prohibit civil unions or domestic partnerships. We cannot make such an assumption. The ballot title itself does not specifically prohibit unmarried persons from having the legal status of a "civil union" or "domestic partnership"; rather, it prohibits unmarried persons from having a legal status that is "identical or substantially similar to marital status." The text of the amendment mirrors the ballot title. Thus, the ballot title is not misleading for failing to give specifics where the amendment does not. Moreover, the amendment clearly provides the General Assembly with the power to pass further legislation determining the rights, obligations, privileges, and immunities of marriage. Until such legislation is enacted, we cannot know whether the amendment will prohibit civil unions or domestic partnerships.

Finally, we note that the terms "civil union" and "domestic partnership" have not been legally defined in this state.[3] Thus, if

---

[3] Our statutory code only mentions the term "domestic partnership" two times, both of which are contained in the Uniform Partnership Act for businesses. *See* Ark. Code Ann.

the terms were used in the ballot title, we would have to engage in legal interpretation and construction to ascertain what those terms mean in order to determine whether they will be prohibited as a legal status that is identical or substantially similar to marital status. As with the previous point, Petitioners must·wait to be heard on this issue until the amendment is approved by a majority of the voters and a justiciable case arises.

### D. Misleading as to the Amendment's Effect on Existing Common Law Marriages

Finally, Petitioners argue that the ballot title is misleading because it gives the voters a false indication of the effect that the measure will have on existing common law marriages. Particularly, they take issue with the phrase: "the Legislature *may* recognize a common law marriage from another state between a man and a woman[.]" (Emphasis added.) They claim that this phrase misleads the voters into thinking that the amendment would expressly require the legislature to vote to recognize common law marriages from other states before such marriages would be recognized. They argue that voters will be misled into thinking that a vote for the amendment would be a vote to ban all existing common law marriages in Arkansas. They claim that this impression is misleading because Arkansas statutory law already provides for recognition of all marriages from other states, except those between persons of the same sex, "which would be valid by the laws of the state or country in which the marriages were consummated[.]" Ark. Code Ann. § 9-11-107 (Repl. 2002).

If we understand Petitioners' argument on this point, it is that the voters will think that the amendment requires an affirmative act of the legislature before common law marriages will be recognized, even though such marriages are recognized, in some instances, under our current law. Thus, their argument amounts to nothing more than a claim that the voters will be misled into thinking that a change in the law will occur. As this court stated in *Becker*, 270 Ark. 219, 224, 604 S.W.2d 555, 558: "The fact that it is an amendment is sufficient to inform [the voter]

---

§ 4-46-906 and § 4-46-1207 (Repl. 2001). The term "domestic partner" is used in Ark. Code Ann. § 9-11-208(d) (Repl. 2002), which provides that "nothing in this section shall prevent an employer from extending benefits to persons who are domestic partners of employees." That term, however, is not defined.

that change will result." *Id.* at 224, 604 S.W.2d at 558. Moreover, in that same case, this court held that a ballot title is not insufficient merely because it fails to reflect the current state of the law. Petitioners are not entitled to relief on this point.

Based on the foregoing, we hold that the ballot title and popular name of Proposed Amendment 3 are sufficient, and we deny Petitioners' request to remove the measure from the ballot. The mandate herein will issue within five days from the filing of this opinion unless a petition for rehearing is filed.

Petition denied.

BROWN, J., concurs.

THORNTON and HANNAH, JJ., dissent.

ROBERT L. BROWN, Justice, concurring. Are the proposed popular name and ballot title so unclear and misleading that this court must strike the amendment from the ballot and deprive the people of this state of an opportunity to vote on it? That is the sole issue before this court today. It is *not* this court's function, pre-election, to construe the terms of the amendment, determine its constitutionality or legality, delve into its impact in every situation, or even to decide whether its passage would be a good thing or a bad thing. Our law is clear on this point. *See, e.g., Roberts v. Priest,* 341 Ark. 813, 20 S.W.3d 376 (2000); *Parker v. Priest,* 326 Ark. 386, 931 S.W.2d 108 (1996); *Ferstl v. McCuen,* 296 Ark. 504, 758 S.W.2d 398 (1988).[1] We only decide today whether the popular name and ballot title give the people of this state a fair understanding of what is at issue.

Here, the ballot title mirrors the language of the amendment. This means that the question of clarity by necessity must be addressed to the amendment itself and not merely to the ballot title. I cannot say that the ballot title and amendment are fatally misleading.

Petitioners' core argument goes to whether the public is sufficiently apprised of the fact that not only same-sex marriages are prohibited by the amendment, but also that other relationships

---

[1] It is true that in an unusual case this court did look to the constitutionality of an amendment, pre-election, but in that case, the issue of impairment of contracts had been raised by the parties. *See Kurrus v. Priest,* 342 Ark. 434, 29 S.W.3d 669 (2000). In the instant case, the parties do not argue the constitutionality of the present amendment, as they did in *Kurrus v. Priest.*

for unmarried persons substantially similar or identical to marriage will not be valid or recognized in this state, if this amendment passes. The pertinent language in the amendment dealing with the issue is this:

> that legal status for unmarried persons which is identical or substantially similar to marital status shall not be valid or recognized in Arkansas. . . .

That language in the amendment and ballot title tells me that unmarried persons united in a substantially similar or identical relationship to marriage will not be given the same legal status by this state as married persons. As the majority opinion points out, at this point we do not know the effect of this language on relationships known in the vernacular as "civil unions," since civil unions are undefined in our statutes.

Much has been written and argued in this case about what the terms "legal status" and "marital status" mean in this clause of the amendment. But, again, the core notion is obvious from the context of the language. Relationships of unmarried persons, though substantially similar or identical to marriage, will not be recognized in this state. Whether to etch that standard into constitutional stone is the issue for the people of this state to determine at the General Election.

Nor do I believe this quoted language is obfuscated or disguised by the popular name or ballot title. Surely the preclusion of unmarried relationships from the same legal status as married relationships *concerns* marriage as the popular name proclaims. And to read "marital status" in the above quoted phrase as any other status but "marriage" would be an absurd reading, which we will not do. *See, e.g., Yarbrough v. Witty*, 336 Ark. 479, 987 S.W.2d 257 (1999).

The petitioners also raise the spectre of certain laws that may be repealed by this amendment which, they contend, is a fact not revealed to the people of this state. They specifically refer to matters like the undefined term, "domestic partners," found in Act 146 of 1997 and codified at Ark. Code Ann. § 9-11-208(d) (Repl. 2002). They also mention the homestead exemption under the Arkansas Constitution and the reference to a "resident of this State, who is married or the head of a family." Ark. Const. art. 9, § 3. They ask: Is that term, head of a family, still viable or has it been called into question by the amendment? These issues were

debated in oral argument before this court, and, not surprisingly, the two principal parties did not agree. Yet, the "what ifs" and the speculative impact of the amendment are not reasons to dub it unclear or misleading at this juncture. Surely, these suggested legal ramifications do not rise to the level of legal invalidity found by this court in an initiative petition that completely overhauled the property tax structure of this state and substantially amended procedures for selling county-owned property. *See Stilley v. Makris*, 343 Ark. 673, 38 S.W.3d 889 (2001). In short, the pivotal issues of the amendment are sufficiently laid out in the ballot title in ten lines for the public to understand them.

Undoubtedly, as is the case with many constitutional amendments, there will be subsequent legislation and litigation to implement and determine the measure's full impact. There may even be a challenge to the measure's constitutionality. But that is stuff for another day. And that possibility does not equate to a lack of sufficient clarity in the language of the amendment so as to negate the people's right to vote on a proposed amendment, which is a right specifically guaranteed by Amendment 7 to the Arkansas Constitution. For these reasons, I join the majority opinion.

RAY THORNTON, Justice, dissenting. In *Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000), Justice Corbin, who wrote for the plurality, stated "[T]he ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and *informed* decision for or against the proposal and *understands the consequences* of his or her vote based on the ballot title." *Id.* (emphasis added). In his concurring opinion in *Kurrus, supra*, Justice Brown made the issue clear by asking, "How can we perform our duty if the amendment itself misleads or deceives the people about what is at issue? The answer is obvious. We cannot." *Id.* Additionally, in *Arkansas Women's Political Caucus v. Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984), Justice Dudley wrote, "[P]opular ballot names which contain catch phrases or slogans that tend to mislead or give partisan coloring to the merit of the proposal will be rejected. *Id.* (Internal citations omitted). The court then concluded that, "The popular name, 'The Unborn Child Amendment' is misleading." *Id.*

In my view, Proposed Amendment 3 with the popular name, "An Amendment Concerning Marriage" is misleading and I respectfully dissent. The popular name, "An Amendment Concerning Marriage," would have been consistent with the text of the following proposal:

Be it enacted by the people of Arkansas:

Section 1. Marriage

Marriage shall only be the union of one man and one woman.

Section 2. Capacity, Rights, Obligations, Privileges, and Immunities

The Legislature has the power to determine the capacity of persons to marry, subject to this amendment, and the legal rights, obligations, privileges and immunities of marriage.

This quoted language is in the proposal under consideration. If the proposal were limited to these provisions concerning marriage, the popular name would not be misleading or deceiving. I would promptly approve its submission to the voters.

However, the popular name and ballot title of Proposed Amendment 3 do not inform the voters of the context of the amendment or the consequences of a vote for or against the proposal. The drafters of Proposed Amendment 3 did not limit the scope and import of the amendment to a prohibition of same-sex marriage or to laws relating to marriage. They included an additional section prohibiting individuals who are not married from having legal rights that are substantially similar to those applicable to married people. They added a section to the amendment under consideration that reads as follows:

Section 2. Marital Status

Legal status for unmarried persons which is identical or substantially similar to marital status shall not be valid or recognized in Arkansas, except that the legislature may recognize common law marriages from another State between a man and a woman.

The popular name does not call attention to the addition of this significant provision relating to unmarried persons. The popular name could simply have been revised to read, "An Amendment Concerning Marriage and Prohibiting Unmarried Persons from Having Substantially Similar Rights." This popular name would have informed voters that the amendment was broader than a prohibition of same-sex marriages and that it would also have an effect on unmarried persons, without regard to their gender or sexual orientation.

Proposed Amendment 3 could repeal or modify a number of Arkansas statutes that affect the rights of unmarried persons and I believe that the voters have a right to some warning that this proposal could limit the rights of single persons under Arkansas law.

For example, under Ark. Code Ann. § 26-51-301 (Supp. 2003) *et seq.*, a single person making less than $7,700.00 is exempted from state income taxes while a married couple filing jointly is exempted if their joint income is less than $15,500.00. It seems clear to me that under Proposed Amendment 3, the legislature could not amend the tax code to grant an unmarried head of household a tax exemption for making less than $15,500.00 because that is a legal status *identical* to a married person. Currently, an unmarried head of household is exempt from State income tax if they make less than $12,000.00. Is that exemption *substantially similar* to the rights of a married person under the tax laws? Would a voter looking at the popular name in the voting booth be informed that such a question would be implicated by passage of the amendment? I do not think that voters would be aware of this problem.

The Arkansas Tax Code provides further protections to unmarried persons identical or substantially similar to the protections provided to a married person. Arkansas Code Annotated § 26-51-501 (Supp. 2003), provides a joint tax credit to a surviving spouse that is identical to the joint tax credit for a married person. A widower, who is by definition not married, may not be allowed to retain the surviving spouse benefits under Proposed Amendment 3. Would a voter be aware that a vote for Proposed Amendment 3 may result in widows and widowers no longer being eligible for surviving spouse benefits? I do not think that the popular name informs the voter of the consequences of his or her vote with regard to this matter.

Another example is that the popular name and ballot title do not inform the voters of the possibility that Proposed Amendment 3 could jeopardize the constitutional rights of an unmarried person to a homestead exemption. An unmarried head of household receives identical rights to homestead protection as a married person under Arkansas Constitution Article 9 § 3. Adoption of a new amendment may repeal provisions of previous constitutional law. Does the popular name or ballot title disclose that Proposed

Amendment 3 might be interpreted as prohibiting a homestead exemption for unmarried persons under the Arkansas Constitution? I do not think so.

Arkansas Code Annotated § 9-11-208 (Supp. 2003) allows employers to extend benefits to the unmarried domestic partners of an employee. This statute allows an unmarried man and woman to receive the same benefits from an employer that a married couple receives. These are rights or a legal status that is identical or substantially similar to the rights conferred by marital status. The consequences of Proposed Amendment 3 could reach all domestic partners receiving benefits from employers. Does the popular name adequately inform voters of this possibility?

These examples illustrate why it is important that voters be informed of the scope and import of a proposed amendment. Nothing in the popular name gives any notice that, in addition to prohibiting same-sex marriages, the text of the amendment is designed to impair or invalidate rights of unmarried people without regard to their sexual preferences.

We should follow the sound teaching of *Christian Civic Action Committee v. McCuen*, 318 Ark. 241, 884 S.W.2d 605, (1994). There, we held that "[t]he ballot title did not convey an intelligible idea of the scope and import of the proposed law," and wrote:

> It is evident that before determining the sufficiency of the present ballot title we must first ascertain what changes in the law would be brought about by the adoption of the proposed amendment. For the elector, in voting upon a constitutional amendment, is simply making a choice between retention of the existing law and the substitution of something new. It is the function of the ballot title to provide information concerning the choice that he is called upon to make. Hence *the adequacy of the title is directly related to the changes he is given the opportunity of approving.*

*Id.* (*citing Bradley v. Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952)) (*emphasis in original*). Neither the majority nor the concurrence addresses this part of the holding from *Christian Civic Action Committee,* but to me it is determinative of this ballot title challenge. In my view, the ballot title does not convey an intelligible idea of the scope and import of the proposed amendment because the popular name is misleading and does not indicate that the amendment could be used to impair or invalidate rights of unmarried persons.

For those reasons, I respectfully dissent.

J IM HANNAH, Justice, dissenting. I must respectfully dissent. In my opinion, a voter faced with the popular name and ballot title the majority approves would not be provided a fair understanding of the issues presented or the impact of his or her vote in favor of the amendment.

Based on the briefs and material presented in this case, as well as recent events nationwide, it is apparent that the goal of the proponents of Amendment 3 is to preclude statutory adoption of any state-recognized and state-protected union of persons such as domestic partners and civil unions. While there certainly is no reason that such issues may not be addressed by an amendment, the law requires that the popular name and ballot title so indicate, which was not done in this case. The issue before this court is simply a lack of candor in the popular name and ballot title, and I believe that this court should compel drafters of popular names and ballot titles to be forthright and clear. "[A]mending the constitution is a precise science which entails complete information flowing to the electorate." *McCuen v. Harris*, 321 Ark. 458, 468, 902 S.W.2d 793 (1995).

The issue before this court is not whether the amendment is a wise idea or not. Two issues are presented to this court. The first issue is whether the popular name adequately identifies the nature of the proposal presented by the amendment. *Gaines v. McCuen*, 296 Ark. 513, 758 S.W.2d 403 (1988). The second issue is whether the ballot title gives the voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law. *Scott v. Priest*, 326 Ark. 328, 932 S.W.2d 746 (1996). I believe that neither the popular name nor the ballot title satisfy these requirements.[1]

The popular name, "An Amendment Concerning Marriage," is misleading. The Amendment would reach outside marriage to control what the State in the absence of the Amendment could adopt as a state-recognized union of persons. Therefore, it is an amendment that concerns far more than marriage as that term is traditionally understood. The scope of the amendment is not described by the popular name.

Marriage is well defined in this State, and it is clear that the amendment covers more than marriage. "Marriage is a civil

---

[1] I agree with Justice Thornton in his dissent where he states that if section two of the proposed amendment were deleted, the popular name and ballot title would be sufficient.

contract between a husband and a wife." *Pickens-Bond Constr. Co. v. Case*, 266 Ark. 323, 331, 584 S.W.2d 21 (1979); *see also* Ark. Code Ann. § 9-11-101 (Repl. 2002). Marriage may only be solemnized between a man and a woman, as codified in Ark. Code Ann. § 9-11-109 (Repl. 2002), where we find, "Marriage shall be only between a man and a woman. A marriage between persons of the same sex is void."

I believe that the popular name misleads the electorate. If the Amendment is intended to preclude any state-recognized union of persons aside from the already recognized union of persons through marriage, the popular name should make that clear. I note yet again that the issue is not whether such unions are good or bad, wise or improvident, but rather whether a voter understands what he or she is voting on. Also, while there is nothing in this case to show an affirmative intent to mislead, such an intent could be present. It is not difficult to imagine members of society who would certainly support marriage, but who might be reluctant to support the Amendment if it were clear from the name that the Amendment also precluded any other union of persons. The popular name, "An Amendment Concerning Marriage," does not indicate that other possible unions of persons are at issue in addition to marriage. This is a defect that could have been very easily remedied had this challenge been brought earlier.

I also have concerns about the ballot title. The ballot title to the proposed amendment states in pertinent part that "marriage consists of the union of one man and one woman; that legal status for unmarried persons which is identical or substantially similar to marital status shall not be recognized in Arkansas. . . ." Perhaps the Amendment might have read, "The only union between persons that shall be recognized in Arkansas shall be the union of marriage, consisting of the union between one man and one woman, and no other union of any kind between persons shall be recognized in this State, except . . ." However, we must decide whether the above quoted language from the ballot title is misleading or insufficient as asserted.[2] *Scott, supra*. I do not believe it meets the test. The term "legal status for unmarried persons" is hopelessly vague and ambiguous. The legal status of unmarried persons is clearly "unmarried." In *DHS v. Collier*, 351 Ark. 506, 95

---

[2] I agree with the majority that because the Amendment sponsors chose to use the Amendment language in their ballot title, we necessarily must interpret that language although our analysis is limited to whether the ballot title meets the requirements of Amendment 7. Use of the Amendment language as a ballot title in no way assures that the

S.W.3d 772 (2003), the term "legal status" was used in the context of wrongful-death decisions, and whether such decisions should be read to confer full legal status upon a fetus. In *Tyson Foods, Inc. v. Conagra, Inc.*, 349 Ark. 469, 79 S.W.3d 326 (2002), the court noted that "trade secret" is a legal status fixed by statute. What is at issue is the legal status of an affected interest. *See, e.g., Tomerlin v. Nickolich*, 342 Ark. 325, 27 S.W.3d 746 (2000). The affected interest in the case before us is unions between persons that this state may recognize. The term "legal status for unmarried persons" is at best redundant and at worst so confusing that it is unintelligible.

Likewise, the term "marital status," which apparently refers back to "legal status," is vague and ambiguous. I disagree that the term "marital status" is clarified by the context of its use. Marital status refers to one's status in relation to marriage, in other words, marriage is one form of marital status, along with unmarried, divorced, or widowed. This is also shown in a footnote in *In Re Adoption D.J.L.*, 341 Ark. 327, 16 S.W.3d 263 (2000), where the court stated, "The appellants argue in their brief that an adoption by two unmarried adults is permissible, but nothing in their abstract denotes their marital status." *Adoption D.J.L.*, 341 Ark. at 328. It remains entirely unclear to me what relationship is referred to by the term "legal status for unmarried persons which is identical or substantially similar to marital status. . . ."

The majority notes that it is unlikely that voters will view the ballot title with the same degree of technicality as the petitioners did in this case. However, it was the intervenors who chose to use legal terms in the ballot title. The use of the legal terms gives rise to the confusion the intervenors now seek to ignore. It is also worthy of note that counsel for intervenors at oral argument stated, "Now, because voters, as long as they know what they are voting on, and if voters think it is misleading, if voters think it is confusing, they can reject it." This is precisely the evil the popular name and ballot must avoid. Because there is indeed the confusion that counsel for intervenors alludes to, this court must strike this measure from the ballot.

In this case, we are yet again presented the unenviable task of ruling on the adequacy of a popular name and ballot title on the

---

requirements of Amendment 7 are met. The ballot title must fairly present the amendment to the voters no matter where the language came from. *See, e.g., Roberts v. Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996).

eve of an election. Ten years ago in *Page v. McCuen*, 318 Ark. 342, 884 S.W.2d 951 (1994), this court stated:

> We commend the General Assembly's past effort in attempting to establish reasonable statutory timetables to implement initiative and referendum measures under Amendment 7. We respectfully ask its further consideration and action and encourage the General Assembly to make another attempt to establish an initiative and referendum procedure that will permit early resolution of such issues. Until appropriate action is taken to correct the problems attendant to proposals submitted under Amendment 7, citizens can continue to expect measures to be removed from the ballot immediately prior to the election. This court does not enjoy being in the "last-minute" position of review. The people of Arkansas deserve an initiative and referendum procedure which allows them the confidence that measures, after having been adequately reviewed, will not be removed from the ballot. The sponsors of initiative proposals should also be assured their ballot titles and proposed measures meet required guidelines and rules before they spend their time, energy and monies in getting their proposal before the voters.

*Page*, 318 Ark. at 348.

The popular name and the ballot title were certified by the Secretary of State to go on the ballot on March 12, 2004. However, the petition commencing the original action challenging the popular name and ballot title was not filed until August 26, 2004.

As we stated in *Page, supra,* we desperately need an initiative and referendum procedure that will permit early resolution of issues such as those presently before this court. No one wishes to see measures removed from the ballot immediately prior to the election. There ought to be an initiative and referendum procedure which assures review early enough so that corrections may be made and measures need not be removed from the ballot. The sponsors of initiative proposals also deserve such a procedure so that their time, energy and monies in getting their proposal before the voters are not wasted.

Neither the popular name nor the ballot title meet the statutory requirements. They are one-sided, and only present a partial description of the proposed change to the Constitution. I would grant the petition.