Mr. Jess Askew, III, Esquire Williams Anderson, PLC Twenty-Second Floor 111 Center Street Little Rock, Arkansas 72201
Dear Mr. Askew:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. Your office previously submitted a similar measure which was rejected due to ambiguities in the text of the proposed measure. See Op. Att'y Gen. 2007-268. You have revised the text, and you propose the following revised popular name and ballot title for the amendment:
 Popular Name
A CONSTITUTIONAL AMENDMENT AUTHORIZING THE GENERAL ASSEMBLY TO ESTABLISH, OPERATE, AND REGULATE STATE LOTTERIES TO FUND SCHOLARSHIPS AND GRANTS FOR ARKANSAS CITIZENS ENROLLED IN CERTIFIED TWO-YEAR AND FOUR-YEAR COLLEGES AND UNIVERSITIES IN ARKANSAS
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING THE GENERAL ASSEMBLY TO ENACT LAWS TO ESTABLISH, OPERATE, AND REGULATE STATE LOTTERIES; REQUIRING LOTTERY PROCEEDS TO BE USED *Page 2 
SOLELY TO PAY THE OPERATING EXPENSES OF LOTTERIES, INCLUDING ALL PRIZES, AND TO FUND OR PROVIDE FOR SCHOLARSHIPS AND GRANTS TO CITIZENS OF THIS STATE ENROLLED IN PUBLIC AND PRIVATE NONPROFIT TWO-YEAR AND FOUR-YEAR COLLEGES AND UNIVERSITIES LOCATED WITHIN THE STATE THAT ARE CERTIFIED ACCORDING TO CRITERIA ESTABLISHED BY THE GENERAL ASSEMBLY; REQUIRING THE GENERAL ASSEMBLY TO ESTABLISH CRITERIA TO DETERMINE WHO IS ELIGIBLE TO RECEIVE THE SCHOLARSHIPS AND GRANTS; DECLARING THAT LOTTERY PROCEEDS SHALL NOT BE SUBJECT TO APPROPRIATION BY THE GENERAL ASSEMBLY; DECLARING LOTTERY PROCEEDS TO BE CASH FUNDS HELD IN TRUST SEPARATE AND APART FROM THE STATE TREASURY TO BE MANAGED AND MAINTAINED BY THE GENERAL ASSEMBLY OR AN AGENCY OR DEPARTMENT OF THE STATE AS DETERMINED BY THE GENERAL ASSEMBLY; REQUIRING LOTTERY PROCEEDS REMAINING AFTER PAYMENT OF OPERATING EXPENSES AND PRIZES TO SUPPLEMENT, NOT SUPPLANT, NON-LOTTERY EDUCATIONAL RESOURCES; DECLARING THAT THIS AMENDMENT DOES NOT REPEAL, SUPERSEDE, AMEND OR OTHERWISE AFFECT AMENDMENT 84 TO THE ARKANSAS CONSTITUTION OR GAMES OF BINGO AND RAFFLES PERMITTED THEREIN; PROHIBITING LOTTERIES AND THE SALE OF LOTTERY TICKETS EXCEPT AS HEREIN SPECIFICALLY PROVIDED
RESPONSE
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may approve and certify or substitute and certify a more suitable and correct popular name and ballot title; or he may reject the entire ballot title, popular name, and petition if he "determines that the ballot title, or the nature *Page 3 
Mr. Jess Askew, III, Esq. Williams Anderson, PLC Opinion No. 2007-288
Page 3 of the issue, is presented in such manner that the ballot title would be misleading. . . ." Id. at (c).
Based on Arkansas Supreme Court precedent, I am certifying your proposed popular name and ballot title as submitted. I should point out, however, an argument exists that the term "state lotteries" in the ballot title is unclear, and that the title is incomplete for failing to reveal the amendment's full effect. Nevertheless, because the text of the amendment contains no specifics as to the term "state lotteries," no corresponding summary can be substituted in the ballot title. The ballot title, therefore, is an adequate description of the text. Additionally, as noted below, there is support in Arkansas case law for the view that most voters will understand what a state lottery entails. Our court has also found a ballot title to be sufficient based in part upon the title's notice to voters that pursuant to the particular proposed amendment, the General Assembly will provide the specifics of the measure through enabling legislation. In light of this precedent, I cannot state that "the ballot title would be misleading. . . ." A.C.A. § 7-9-107(c), supra. It is my duty under these circumstances to issue the certification required by subsection 7-9-107.
DISCUSSION
Subsection 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Accordingly, neither certification nor rejection of a popular name andballot title reflects my view of the merits of the proposal. This officehas been given no authority to consider the merits of any measure. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law."Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d, 669 (2000); Donovan v.Priest, 326 Ark. 353, 931 S.W.2d 119 (1996); and Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992).
It must also be initially emphasized that I am not advising you concerning the substance of your proposal. As I stated in Opinion 2007-268, I have no constitutional role in the shaping or drafting of voter initiatives. I found it necessary in that opinion to note the ambiguity surrounding the term "lotteries" as *Page 4 
used in the text of your previous submission, given the requirement that a ballot title must provide information about proposed changes in the law, see, e.g., Bradley v. Hall, 220 Ark. 925, 251 S.W.2d 470 (1952), and given my inability to determine the intended scope of that term. However, contrary to your apparent impression that I suggested your proposal be revised to authorize the creation of a "State lottery," my previous opinion offered no advice regarding clarification of the ambiguity. I am concerned only with the legal requirements to allow the measure to be submitted to the voters. Determining how to satisfy those requirements is a matter that must be left to your judgment and discretion.
Regarding the legal requirements, the popular name is primarily a useful legislative device, and is to be considered together with the ballot title in determining the ballot title's sufficiency. See Pafford v. Hall,217 Ark. 734, 233 S.W.2d 72 (1950) and Moore v. Hall, 229 Ark. 411,316 S.W.2d 207 (1958). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976).
With respect to the ballot title, our court has consistently warned that the ballot title "must be an impartial summary of the proposed amendment and it must give voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law." May v. Daniels, 359 Ark. 100, 106, 194 S.W.2d 771 (2004), citingScott v. Priest, 326 Ark. 328, 932 S.W.2d 746 (1996) and Parker v.Priest, 326 Ark. 123, 930 S.W.2d 322. It must be "free from misleading tendencies," id., and it "cannot omit material information that would give the voters serious ground for reflection." Id. According to the court, "the ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote based on the ballot title." May, 359 Ark. at 107, citing Roberts v.Priest, 341 Ark. 813, 20 S.W.3d 376 (2000) and Christian Civic ActionCommittee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994).
Having analyzed your proposed constitutional amendment and your proposed popular named and ballot title under these precepts, it is my conclusion that the popular name is sufficient as submitted. The submitted ballot title in my opinion also meets the legal requirements, but some further discussion of the title is necessary. *Page 5 
The proposed title plainly represents an impartial summary of the measure. You have revised the text to address most of the ambiguities discussed in Attorney General Opinion 2007-268, and the proposed ballot title impartially summarizes each provision of the revised measure. I note that you have not changed the provision making "citizens of this state" eligible for scholarships and grants. While it remains my opinion that this language may be unclear in the context of your proposed amendment, I cannot state that the ballot title is sufficiently vague or misleading so as to require rejection on this basis.
The more important question in my view is whether the ballot title language with respect to the authorization of "State lotteries" satisfactorily apprises the voter of the proposed changes in the law. As the court has stated:
 It is evident that before determining the sufficiency of the present ballot title we must first ascertain what changes in the law would be brought about by the adoption of the proposed amendment. For the elector, in voting upon a constitutional amendment, is simply making a choice between retention of the existing law and the substitution of something new. It is the function of the ballot title to provide information concerning the choice that he is called upon to make. Hence the adequacy of the title is directly related to the degree to which it enlightens the voter with reference to the changes that he is given the opportunity of approving.
Bradley v. Hall, supra, 220 Ark. at 927.
Your measure proposes to amend the constitution to authorize the General Assembly to "establish, operate, and regulate State lotteries." Under your previous submission, the General Assembly was authorized to "provide for the operation and regulation of lotteries by or on behalf of the State." See Op. Att'y Gen. 2007-268. Because the meaning of the term "lotteries" was not apparent from the context of that proposed amendment, I was unable to substitute and certify a ballot title for the measure. May, supra, 359 Ark. at 108 (noting that "[t]he fact that a term is capable of more than one possible meaning does not render the term meaningless, so long as its meaning may be fairly gleaned from thecontext in which it is used." Emphasis added.). You have elected to revise the *Page 6 
measure to authorize the enactment of laws respecting "State lotteries." Because the text of the measure offers no specifics concerning "State lotteries," the ballot title can only mirror the amendment itself. Similar to your previous submission, therefore, the question arises whether such ballot title provides the voter with sufficient information concerning the choice he or she is called upon to make. See Bradley,supra.
In this regard, I note that the Arkansas Supreme Court has previously approved the use of the term "state lottery" in the face of a ballot title challenge. See Christian Civic Action Committee v. McCuen andParker v. Priest, supra. In Parker, the court responded as follows to the argument that the ballot title at issue was confusing because it presented multiple considerations to the voters:
 We note that some of the specific terminology used in this ballot title was tacitly approved in Christian Civic Action Committee, 318 Ark. 241, 248, 884 S.W.2d 605, 609, where this court stated that most voters could readily understand the use of words such as "state lottery," "charitable bingo and raffles," and "pari-mutuel wagering."
326 Ark. at 132.
In Christian Civic Action Committee, the court observed that the "state lottery" was among several proposed forms of gambling which "appear under common appellations that have a more-or-less general currency among the public." 318 Ark. at 248. The court further commented: "It can be assumed that most voters will readily understand what a state lottery, a charitable bingo game, and a charitable raffle entail." Id.
As you have pointed out, these cases would appear to support the view that the voters understand what a "state lottery" entails, indicating that they can fairly glean the meaning of the term "state lotteries" as used in your proposed amendment and ballot title. I must nevertheless note that similar constitutional amendments authorizing state-operated lotteries have been the subject of disputes in a number of other states, with varying outcomes in terms of the amendments' scope and ramification. In Wisconsin, for instance, uncertainty surrounding a 1987 constitutional amendment authorizing a state-operated lottery eventually led to the adoption of another amendment that expressly narrowed the lottery's *Page 7 
potential scope. See Dairyland Greyhound Park v. Doyle, 295 Wis.2d 1,719 N.W.2d 408 (2006) and Panzer v. Doyle, 271 Wis. 2d 295, 680 N.W.2d 666
(2004) (discussing, inter alia, Wis. Const. art. IV, § 24, which, following a 1993 amendment, authorizes a "state-operated lottery" as an exception to a broad proscription against gambling, and specifically defines "state-operated lottery" to exclude casino-style games such as slot machines and video poker.)
My research has yielded other similar cases involving the scope of constitutional provisions authorizing state-run lotteries. See, e.g.,Dalton v. Pataki, 5. N.Y.3d 243, 265, 835 N.E.2d 1180 (2005) (concluding that video lottery played using video lottery terminals (VLTs) is a valid lottery under N.Y. Const. art. I, § 9 (1), which provides that "no lottery or the sale of lottery tickets . . . except lotteries operated by the state and the sale of lottery tickets in connection therewith . . . shall hereafter be authorized or allowed within this state," and that "rather than slot machines, VLTs are simply mechanical devices for the implementation of the video lottery."); In Re Advisory Opinion toGovernor, 856 A.2d 320 (R.I. 2004) (determining that proposed casino falls within R.I. Const. art. 6, § 15's exception for "lotteries operated by the state," based upon the court's historically broad interpretation of the lottery proscription, but finding an unconstitutional delegation of operational control from the state to a private party); Poppen v.Walker, 520 N.W.2d 238 (S.D. 1994) (holding that video lottery is not authorized under S.D. Const. art. III, § 25, which makes it lawful for the legislature to authorize a "state lottery which is regulated, controlled, owned and operated by the State. . . .); State v. ex rel.Mountaineer Park v. Polan, 190 W. Va. 276, 283, 438 S.E.2d 308 (1993) (questioning whether voters were approving electronic video lottery operations when they ratified W.Va. Const. art. VI, § 36, in 1984, allowing the legislature to authorize state-operated lotteries, observing that "video lottery terminals" are "converted slot machines" and different from "common state run lottery games."); but see State v. W.V.Economic Dev. Auth., 214 W. Va. 277, 588 S.E.2d 655 (2003) (applying historical judicial definition of lottery and concluding that legislatively-authorized video lottery machines are "lotteries" as that term is commonly understood); State ex rel. Stephan v. Finney,254 Kan. 632, 651, 655, 867 P. 2d 1034 (1994) (rejecting argument, in a case involving the legality of compacts with Indian tribes authorizing casino gambling, that the "state-owned and operated lottery" authorized under Kan. Const. art. 15, § 3c, is limited to lotteries such as those existing in states operating lotteries, and concluding that the term "state-owned lottery" means "any state-owned and operated game, scheme, *Page 8 
gift, enterprise, or similar contrivance wherein a person agrees to give valuable consideration for the chance to win a prize or prizes.")See also Ky. Op. Att'y Gen. 99-8 (opining that the lottery amendment authorizing a "Kentucky state lottery," Ky. Const. § 226,(1), "should be construed narrowly to include only the state lottery games in operation at the time it was adopted," and not broadly so as to authorize casino games such as slot machines at convenience stores and gas stations.)
Doubt over the scope of the terms "state lottery" or "lotteries operated by the state" is apparent from a review of these and other similar cases. The concern, therefore, is whether the proposed ballot title is insufficient because the proposed amendment itself fails to include relevant information that would allow the voter to make an informed decision. Cf. Kinchen v. Wilkins, 367 Ark. 71, ___ S.W.3d ___ (2006) (text of proposed ordinance held to be an insufficient ballot title, as the ordinance itself did not sufficiently apprise the voter of information necessary to making an informed decision in the voting booth.)
On the other hand, the above-cited cases from other jurisdictions were not ballot title challenges. Additionally, I note that the Arkansas Supreme Court has avoided interpreting initiated measures in ballot title cases, or speculating as to how a proposed amendment might be interpreted in the future or how it might affect current law. See May,supra, 359 Ark. at 110-112. The court in May stated:
 [W]hile we may be required to consider the language of the amendment itself to determine whether a term or phrase in the title is vague or misleading, this does not mean that we will interpret the amendment in the sense of construing or applying it.
Id. at 112.
It also bears noting that the ballot title's sufficiency in May was also premised upon the title's disclosure of the legislature's power to implement and thereby interpret the amendment through enabling legislation. The following statement would seem to apply equally to your proposed amendment and ballot title: *Page 9 
 Because the actions of the legislature will occur in the future, an interpretation of the particulars of this amendment is yet to come. The voters are sufficiently informed of this.
Id. at 109. See also Porter v. McCuen, 310 Ark. 562, 839 S.W.2d 512
(1992) (noting the ballot title's disclosure of the Department of Finance and Administration's authority to issue regulations implementing certain aspects of the proposed initiated act).
These considerations, coupled with our court's previous observation that most voters will understand the use of the term "state lottery," form the basis for my conclusion that the proposed ballot title should be certified as submitted. I cannot substitute a more suitable and correct ballot title without engaging in conjecture as to what is meant by "State lotteries." Nor can I compel you to redesign the measure unless I determine that "the ballot title, or the nature of the issue, is presented in such manner that the ballot title would be misleading. . . ." A.C.A. 7-9-107(c) (emphasis added). I cannot state that your proposed ballot title would be misleading, in light of the above precedent. My duty under these circumstances is to issue the certification required by subsection 7-9-107. Accordingly, your proposed ballot title is hereby certified as submitted.
Pursuant to A.C.A. § 7-9-108, instructions to canvassers and signers must precede every petition, informing them of the privileges granted by the Constitution and of the penalties imposed for violations of this act. Enclosed herewith, over the signature of the Attorney General, are instructions that should be incorporated in your petition prior to circulation.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 1